No. 45,383

MAURICE F. STURDY, *Appellant*, v. ALLIED MUTUAL INSURANCE COMPANY, a corporation, *Appellee*.

(457 P. 2d 34)

Opinion filed July 17, 1969.

*Gerald L. Michaud*, of Wichita, argued the cause, and *Russell Cranmer, M. William Syrios, Kenneth L. Ingham, Bradley Post*, and *Jim Lawing*, all of Wichita, were with him on the brief for the appellant.

*Robert C. Foulston*, of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is an action by an insured against his insurer to declare the extent of uninsured motorist coverage in an automobile insurance policy. Trial to the court upon stipulated facts resulted in judgment for the defendant insurer from which plaintiff insured has appealed.

The issue is whether the policy should be interpreted to provide

$10,000 or $20,000 coverage for damage inflicted by an uninsured motorist.

Plaintiff, a Wichita police officer, while riding a motorcycle on duty, collided with another automobile. Further background may best be understood by quoting the stipulation of facts upon which the action was submitted to the trial court, as follows:

"1. On October 4, 1966, the plaintiff had in effect a policy of insurance, number AF 387422. A copy of said policy, and endorsements, is attached to the pleadings filed herein, marked Exhibit 1, and made a part of this stipulation. The petition and answer are made a part of this stipulation.

"2. On the date aforesaid, the plaintiff was involved in an automobile accident while riding a motorcycle. As a result of the accident, plaintiff received permanent injuries.

"3. Plaintiff contended that the motorist with whom he collided, or the motorist whom plaintiff contended caused the accident were either one or both uninsured motorists. Defendant denied this contention.

"4. Subsequent to the accident arbitration proceedings were commenced pursuant to the terms of the insurance policy, and in accordance with the stipulation and agreement of the parties hereto. The parties submitted to arbitration the following questions:

"(a) Whether or not either of the motorists were uninsured;

"(b) The legal liability of either of the motorists for the injuries to plaintiff; and

"(c) The dollar value of the injuries and damages sustained by the plaintiff.

"5. The parties agreed that a declaratory judgment action would be filed and expressly reserved, for determination by the court, the question as to the amount of coverage provided by the policy. The parties further agreed that if the award of the arbitrator exceeded the sum of $10,000.00, the defendant would pay the sum of $10,000.00, and this court would determine what, if any, additional amounts were due under the policy.

"6. On July 10, 1967, the arbitrator made an award in favor of the plaintiff and against the defendant in the sum of $20,000.00.

"7. Defendant has paid the sum of $10,000.00, and the parties request the court to determine whether or not plaintiff is entitled to the additional sum of $10,000.00.

"8. The parties agree that the court has jurisdiction of the parties and the subject matter of the action, that there are no disputed issues of fact, and that the court may render judgment on this stipulation and the briefs of the parties."

The petition and answer followed this stipulation, joining issue on policy interpretation as to amount due. Additionally, plaintiff asked for attorney fees under K. S. A. 1968 Supp. 40-256.

The concept of uninsured motorist coverage is relatively new, being largely developed since 1956. Excellent discussions on the nature and history of the subject may be found at 11 Am. Jur. Trials, Uninsured Motorist Claims, p. 77; 62 Northwestern University Law Review 497 and 43 Notre Dame Lawyer 5. This is our first case involving uninsured motorist coverage. Various aspects of the subject have reached other appellate jurisdictions with not always harmonious results (see cases in ALR 2d Later Case Service for 79 ALR 2d 1252). Many of the cases present different factual situations and some turn on the question whether various policy limitations and exclusions amount to restriction of mandatory statutory coverage. We have no such question as the coverage here is a voluntary type, the insurance contract having been executed prior to the effective date of our recently enacted uninsured motorist law (K. S. A. 1968 Supp. 40-284, *et seq.*). For our purposes we may say uninsured motorist coverage is protection afforded an insured by first party insurance against bodily injury inflicted by an uninsured motorist, after the liability of the uninsured motorist for the injury has been established.

We should first note provisions of the policy pertinent under the contentions of each side. On its declaration page the following appears:

"3. The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. On each described owned automobile . . . the insurance afforded is only with respect to such coverages as are indicated for each described automobile by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto."

Next in boxed form is this:

| PREMIUMS Car 1 | Car 2 | LIMITS OF LIABILITY | | COVERAGES | |
|---|---|---|---|---|---|
| $60.00 | $100.00 | 25 thousand dollars each person<br>50 thousand dollars each occurrence | A | Bodily Injury<br>Liability | Part I |
| $33.00 | $55.00 | 5 thousand dollars each occurrence | B | Property Damage<br>Liability | Part II |
| $8.00 | $10.00 | 1000.00 each person | C | Medical Payments | |
| . . . | | | | | |
| $2.00 | $2.00 | 10 thousand dollars each person<br>20 thousand dollars each accident | J | Uninsured Motorists<br>(Bodily Injury Only) | Part IV |

Car 1 and Car 2 are later described in the policy as a 1963 Dodge and a 1955 Plymouth.

Other pertinent provisions in the insuring agreement are:

"PART IV—PROTECTION AGAINST UNINSURED MOTORISTS

"Coverage J—Uninsured Motorists (Damages for Bodily Injury). To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

" 'insured' means:

"(a) the named insured and any relative;

"(b) any other person while occupying an insured automobile; and

"(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this Part applies sustained by an insured under (a) or (b) above.

"The insurance afforded under Part IV applies separately to each insured,

but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.

. . . . . . . . . . . . .

"Exclusions. This policy does not apply under Part IV:

"(a) to bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured or a relative, or through being struck by such an automobile.

. . . . . . . . . . . . .

"Limits of Liability.

"(a) The limit of liability for uninsured motorists coverage stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the declarations as applicable to 'each accident' is the total limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident.

. . . . . . . . . . . . .

"Other Insurance. With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Part IV shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

. . . . . . . . . . . . .

"CONDITIONS

. . . . . . . . . . . . .

"4. Two or More Automobiles—Parts, I, II and III. When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each, but an automobile and a trailer attached thereto shall be held to be one automobile as respects limits of liability under Part I of this policy, and separate automobiles under Part III of this policy, including any deductible provisions applicable thereto."

Highly summarized, the position of the parties upon appeal is: First, each contends the policy clearly and unambiguously declares the coverage afforded by the policy. Plaintiff says this declaration is the sum of $20,000; defendant says $10,000. Each party makes

an additional contention. Plaintiff argues in the alternative the language of the policy is ambiguous and should be strictly construed against the insurer so as to permit coverage of $10,000 for each automobile insured under it, or $20,000. Defendant contends the provisions of the "other insurance" clause limit its liability to a total of $10,000.

Let us pursue each party's contention the policy is clear and unambiguous as to declaration of applicable coverage. Defendant points first to paragraph 3 of the declaration page providing "The limit of the company's liability against each such coverage shall be as stated herein", then to the "Limits of Liability" column under which coverage is stated for uninsured motorists as "10 thousand dollars each person", and finally, to the Part IV declaration under limits of liability that "The limit of liability for uninsured motorists coverage stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages . . . sustained by one person. . . ."

Countering the above is the fact "coverage" is used in the foregoing in the singular whereas paragraph 3 of the declaration page also uses the term "coverages" in the plural followed by "as are indicated for each described automobile by specific premium charge or charges", which suggests that the number of coverages is to be reflected in the number of premiums paid. Hence the stated limit of liability is directed against "*each* such coverage" (Our italics) as used in paragraph 3. When two independent premium charges of equal amount are made, the same argument may be directed toward the use of the expression "10 thousand dollars each person" and the Part IV clause "The limit of liability for uninsured motorists coverage [*singular*] stated in the declaration." It is apparent the uninsured motorist coverage has been added to the standard form already in use for other type automobile casualty insurance. Some of the uncertainty in its statement of coverage may arise from the fact this particular form was never designed for a kind of coverage not tied to a particular automobile. Each party presents an argument that inferentially paragraph 4 of the conditions clause supports its interpretation but we see no great comfort there for either.

The result is, if only one premium were paid for one vehicle, there is no occasion for use or consideration of the plural and no question as to the amount of coverage ever arises but where, as here, two premiums were paid for two vehicles, the answer is not so clear.

The policy simply does not state plainly, explicitly and unmistakably just what the coverage is.

Defendant points to the "other insurance" clause as limiting its liability to $10,000. We should make clear the first paragraph of that clause has no application (it is not contended otherwise) because here there was no other insurance applicable as primary insurance to the motorcycle upon which plaintiff was riding so as to create an "excess" situation.

Defendant seeks advantage of the second paragraph which provides that if the insured has "other similar insurance available to him and applicable to the accident" the damage shall not exceed the higher limits of the two coverages and moreover shall be prorated between the two. Defendant in effect argues the coverages on car 1 and on car 2 constitute "other" insurance between the two so as to result either in limiting or prorating its total liability to $10,000. We think not. The word "other" has a well understood, plain meaning. Webster's Third New International Dictionary, p. 1598, defines it:

". . . not being the one (as of two or more) first mentioned or of primary concern . . . being the ones distinct from the one or those first mentioned or understood . . . not the same: different. . . . More, additional. . . ."

As used in an insurance policy we think the term "other insurance" means insurance in addition to that effected by the policy under consideration (see 30 Words and Phrases, perm. ed., 401). There is no other carrier or policy in this case. Plaintiff had no other policy or insurance available to him except the policy in question and the "other insurance" clause becomes inapplicable, rendering it unnecessary to determine if any repugnancy exists therein. Defendant here chose to issue coverage on two separate automobiles and to accept a premium for each. Under these facts, clauses designed to prevent the paying of a disproportionate amount of a loss which is properly shared with another insurance company should not be distorted to reduce whatever amount is otherwise due the insured under his policy.

We have reviewed the decisions cited by defendant. Nearly all are distinguishable upon the facts, as where coverage in other carriers existed. Defendant does point to a contrary result reached in *Ringenberger v. General Accident F. & L. Assur. Corp.*, (Fla. App. 1968) 214 So. 2d 376, where coverage in the same policy was in

effect for two automobiles. The insured while in a nonowned automobile was involved in a collision with an uninsured motorist. His recovery was limited to $10,000 rather than the $20,000 claimed under both coverages. In addition to our conclusion that an "other insurance" clause is inapplicable when only one policy is under consideration, we note other factors in the *Ringenberger* case which detract from its persuasiveness here. First, the premium charged for the second automobile was less than that for the first vehicle; second, testimony by an expert witness was accepted on behalf of the insurer that addition of the second automobile to the policy did not increase the exposure to the insurer from collisions while the insured was occupying a nonowned automobile; and finally, the opinion cited as authoritative the case of *Hilton v. Citizens Insurance Company of New Jersey*, (Fla. App. 1967) 201 So. 2d 904. In the Hilton case the policy specifically provided that regardless of the number of automobiles to which the policy applies, the limit for uninsured motorist coverage stated in the declarations as applicable to each accident is the total limit of the insurer's liability for all damages sustained by one or more persons as the result of any one accident.

Cases in accord with the view we have taken, where there has been either more than one automobile covered in the same policy or more than one policy with the same carrier covering different automobiles, include *Robey v. Safeco Insurance Company of America*, (W. D. Ark. 1967) 270 F. Supp. 473, affirmed in part in *Safeco Insurance Company of America v. Robey*, (8 CA, 1968) 399 F. 2d 330; *Deterding v. State Farm Mut. Auto. Ins. Co.*, 78 Ill. App. 2d 29, 222 N. E. 2d 523 and *Bryant v. State Farm Mutual*, 205 Va. 897, 140 S. E. 2d 817. In these cases multiple recovery was allowed upon each coverage despite the "other insurance" clause. We think the rationale of these particular cases is not affected by their having arisen in states having a limited form of mandatory uninsured motorist coverage; for example, in the first cited case the policies aggregated more than the minimum statutory requirements and the court pointed out that the Arkansas statute merely prescribed a minimum amount of coverage, leaving the insurer free to issue as many policies as it may be able to sell.

We hold where two automobiles are insured for uninsured motorist coverage in the same policy and the named insured while riding a motorcycle suffers bodily injury from an uninsured mo--

torist, the coverages on the two automobiles do not constitute, as to each other, other similar insurance available to the insured within the meaning of an "other insurance" clause providing for limitation of liability and pro rata sharing.

Further exploring the policy we find it defines two separate classes of persons as being "insured" under it: First, the named insured (and any relative); and second, any other person while occupying an insured automobile. To be insured, the latter must actually be occupants of an insured vehicle. Their coverage is tied to and limited to actual occupancy of a particular automobile. This is not true of the named insured. His coverage, with one important exception, is not tied to or limited by occupancy of an automobile. In 11 Am. Jur. Trials, Uninsured Motorist Claims, § 8, p. 91, we find this discussion of the standard form of this type coverage:

"Indeed, he [the named insured] need not be an occupant of a motor vehicle. There is no 'occupancy' requirement for such a person, only a necessity that bodily injury be produced by an uninsured automobile. The person may be injured while a pedestrian or engaged in any other nonvehicular activity."

Thus we see that the policy provides the named insured with two kinds of coverage: While he is in his insured automobile, and wherever else he may happen to be when he suffers bodily injury due to an uninsured motorist. This latter constitutes a broad reservoir of coverage. The only exception in it arises from the specific exclusionary clause which provides the policy does not apply to bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured (or a relative) or through being struck by such an automobile. Obviously this exclusion is designed to prevent two or more automobiles being covered for the price of one, inasmuch as ownership of an automobile is the foundation of the entire policy, and to induce persons owning more than one automobile to secure coverage for all. In effect, then, as to the named insured, upon his payment of a single premium for one automobile, the policy provides vast coverage—with the single important exception. If, in paying one premium for a single automobile, coverage is purchased while occupying the insured automobile along with the coverage not tied to that automobile, the question might well be asked, What coverage is intended by payment of an equal premium for a second auto-

mobile? Does it include the broad reservoir of coverage secured under the first premium for the first automobile, and if not, why?

This court has held in numerous decisions that an ambiguous insurance policy will be construed strictly against the insurer. Where an insurer prepares its own contracts, it has a duty to make the meaning clear, and if it fails to do so, the insurer and not the insured must suffer. If the terms of a policy of insurance are ambiguous or obscure or susceptible of more than one construction, the construction most favorable to the insured must prevail. Courts should not be astute to evade the meaning of words manifestly intended by the parties. The language of a policy of insurance must, if possible, be construed in such manner as to give effect to the intention of the parties at the time it was made as expressed therein. In the application of this rule the test is not what the insurer intended the words of the policy to mean but what a reasonable person in the position of the insured would have understood them to mean (*Leiker v. State Farm Mutual Automobile Ins. Co.,* 193 Kan. 630, 633, 396 P. 2d 264; see, also, *Buchanan v. Employers Mutual Liability Ins. Co.,* 201 Kan. 666, 443 P. 2d 681). Unclear and obscure clauses in a policy of insurance should not be allowed to defeat the coverage reasonably to be expected by the insured.

In *Lavin v. State Farm Mutual Automobile Ins. Co.,* 193 Kan. 22, 391 P. 2d 992, an insured owned three automobiles upon which the insurer issued three separate policies containing a provision for payment of medical expenses in the amount of $500. Premiums were paid for such coverage. The son of the named insured was injured while occupying one of the insured vehicles. His medical expenses exceeded $1500. The insurer tendered only $500 under the one policy covering the vehicle occupied by the son when he was injured. The son sued to recover on the other two. This court applied the foregoing rules of construction and permitted recovery on all three policies despite certain exclusionary clauses therein. In the course of the opinion it was stated that insurance providing for medical payment is "closely akin to a personal accident policy." (p. 26.) We think the decision has some analogy to the case at bar where the indemnity provided is for injury to the person.

It must be borne in mind the purpose of uninsured motorist insurance is to provide compensation for personal injury to the innocent victim of the uninsured motorist. As to the named insured the coverage is a contract benefit for which he has paid. Here the

damage to the insured has been determined and he now seeks indemnity for it. He is not seeking any windfall as a result of his injury but he is seeking full indemnity based on payment of two separate premiums. Applying traditional rules of construction we think he is entitled to that coverage. Of the two constructions which could be placed on the limitation of coverage in this particular policy under these facts, this conclusion effectuates insurance as to each automobile mentioned in the policy and permits recovery rather than forfeiture of a benefit for which the insured has paid. Defendant seeks to avoid fully indemnifying its insured on what we believe to be an overly strict construction of its policy in its favor. If it were intended to restrict the limit of liability to $10,000 in one policy where more than one automobile is covered, this could have been very easily accomplished in plain, unmistakable language, as was done in *Hilton.* We are accustomed to purchasing insurance which follows the person in units or multiples, with the premium fixed by the insurer accordingly (the premium, of course, is subject to state regulation). When we pay a double premium we expect double coverage. This is certainly not unreasonable but, to the contrary, is in accord with general principles of indemnity that amounts of premiums are based on amounts of liability. Defendant argues that what plaintiff is seeking amounts to pyramiding coverage but nothing is said about pyramiding the premiums which effectuate the coverages. We would not be understood as implying that an injured insured can pyramid separate coverages in the same policy so as to recover more than his actual loss (see *Rosson v. Allied Mutual Ins. Co.,* No. 45,384, 203 Kan. 795, 457 P. 2d 42).

We hold that plaintiff is entitled to a total of $20,000 coverage, and the trial court erred in limiting recovery as it did.

In view of the conclusion just reached the further question remains as to plaintiff's entitlement to attorney fees under K. S. A. 1968 Supp. 40-256 which provides for payment of attorney fees by a losing insurer in a suit brought against it when it appears the insurer has refused without just cause or excuse to pay the full amount of the loss.

Whether attorney fees are to be allowed must depend on the facts and circumstances of each particular case (*Parker v. Continental Casualty Co.,* 191 Kan. 674, 383 P. 2d 937). This action is one for declaratory judgment. By agreement, after submission of certain

issues to arbitration, the extent of coverage was submitted to court action. A good faith legal controversy as to policy interpretation existed, being one of first impression in this jurisdiction. The policy in question might properly be denominated a standard form used in the insurance industry but uniform rules as to its interpretation have never been established. We think the defendant has not been unreasonable in its position, though mistaken, and we cannot say it refused without just cause or excuse to pay the full amount of the loss as now determined. Hence we hold attorney fees are not allowable here.

The judgment appealed from is reversed with directions to enter judgment according to the views expressed herein.

APPROVED BY THE COURT.

PRICE, C. J., and FROMME, J., dissent.