No. 54,134

PATRONS MUTUAL INSURANCE ASSOCIATION, *Appellant,* v. CHARLES NORWOOD, *Appellee.*

(647 P.2d 1335)

Opinion filed July 16, 1982.

*Allen R. Slater,* of Haskin, Hinkle, Slater & Snowbarger, of Olathe, argued the cause and was on the brief for the appellant.

*Donald W. Vasos,* of Vasos, Kugler and Dickerson, of Kansas City, argued the cause and was on the brief for the appellee.

*Wayne T. Stratton,* of Goodell, Stratton, Edmonds, Palmer & Wright, of Topeka, was on the brief *amicus curiae* for the Kansas Association of Defense Counsel.

*L. M. Cornish,* and *Gregory F. Maher,* of Glenn, Cornish, Schulteis & Hanson, Chartered, of Topeka, were on the brief *amicus curiae* for the Alliance of American Insurers and the Kansas Association of Property and Casualty Insurers, Inc.

The opinion of the court was delivered by

HERD, J.: This is an appeal from a declaratory judgment. The essential facts are undisputed. On December 9, 1979, Patrons Mutual Insurance Association issued a policy of automobile insurance to Maeola Norwood. On March 10, 1980, Maeola Norwood was driving her automobile on Parallel Parkway in Kansas City, Kansas, when she made a left turn in front of a car driven by Elmer Rainey. The two automobiles collided. Charles Norwood was a passenger in the automobile being driven by his wife, Maeola. He sustained personal injuries as a result of the collision.

Charles Norwood proceeded to file a claim for damages against his wife, Maeola, under the liability provisions of the policy issued to her. Patrons denied the claim on the grounds of in-

terspousal tort immunity as outlined by this court in *Sink v. Sink,* 172 Kan. 217, 239 P.2d 933 (1952), and reaffirmed in *Guffy v. Guffy,* 230 Kan. 89, 631 P.2d 646 (1981). Charles Norwood then made a claim for uninsured motorist protection, arguing his wife, although insured, was uninsured as to him because of interspousal immunity. Patrons denied the claim on the grounds neither driver was uninsured.

In August of 1981 Charles Norwood filed a Demand for Arbitration with the American Arbitration Association, pursuant to the insurance policy issued to Maeola, claiming he was entitled to benefits under the policy's uninsured motorist provisions.

On October 2, 1981, Patrons filed a "Petition for Injunction and For Declaratory Judgment" asking the court to enjoin Charles Norwood's efforts to force arbitration of his claim and to determine the rights of the parties. On January 11, 1982, the district court filed its "Memorandum Decision." First, relying on *Clayton v. Alliance Mutual Casualty Co.,* 212 Kan. 640, 512 P.2d 507 (1973), the court held Norwood could not force arbitration of his dispute with Patrons. Further, the court found Maeola Norwood was an uninsured operator of the automobile in which Charles Norwood was a passenger and that Charles Norwood was legally entitled to bring an action against Patrons pursuant to the uninsured motorist provisions of the policy.

Patrons has appealed.

The issue is whether the Kansas doctrine of interspousal immunity precludes recovery of damages by a husband for personal injuries suffered in an automobile accident caused by his wife's negligence where such recovery is sought under the uninsured motorist provisions of a liability policy issued to his wife.

It should first be noted this court is without jurisdiction to hear appellee's argument that the trial court erred in holding Charles Norwood could not force arbitration of his claim. That holding was not timely appealed and as such we are precluded from reviewing it. K.S.A. 60-2103(*h*); *Chetopa State Bancshares, Inc. v. Fox,* 6 Kan. App. 2d 326, 334, 628 P.2d 249 (1981).

Let us now turn to Charles Norwood's claim against Patrons. The policy issued to Maeola Norwood defines "insured" as "the named insured [and] any relative." The uninsured motorist section of the policy requires the company:

"To pay all sums which the insured or his legal representative shall be legally

entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease . . . sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile . . . ."

Under the policy an uninsured automobile includes "an automobile . . . with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder . . . ." Thus Charles Norwood claims he is an insured under the terms of his wife's policy, that his wife is an uninsured motorist because Patrons had denied coverage under the policy issued to Maeola and that pursuant to the uninsured motorist section of the policy Patrons should be required to pay all sums which he can show as damages resulting from the accident.

K.S.A. 40-284, the Kansas uninsured motorist statute, provides in pertinent part:

"(a) No automobile liability insurance policy covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless the policy contains or has endorsed thereon, a provision with coverage limits equal to the limits of liability coverage for bodily injury or death in such automobile liability insurance policy sold to the named insured for payment of part or all sums *which the insured or the insured's legal representative shall be legally entitled to recover as damages from the uninsured owner or operator of a motor vehicle* because of bodily injury, sickness or disease, including death, resulting therefrom, sustained by the insured, caused by accident and arising out of ownership, maintenance or use of such motor vehicle, or providing for such payment irrespective of legal liability of the insured or any other person or organization." (Emphasis added.)

Initially, it is argued by appellee that because an insured's claim against the uninsured motorist insurance carrier is based on contract, and the interspousal immunity doctrine set forth in *Guffy v. Guffy* applies only to actions for tortious personal injury, the defense should not be available to Patrons. Judge Abbott spoke to this issue in *Hammerman v. Southwestern Ins. Group*, 1 Kan. App. 2d 445, 448, 571 P.2d 1 (1977):

"It has been said uninsured motorist insurance is in the nature of a contract of indemnity as opposed to liability insurance. It does not protect the insured against liability but rather it insures him against loss by a limited group of tortfeasors. [Citation omitted.] Uninsured motorist coverage has been described as more closely resembling 'limited accident insurance.' [Citation omitted.]

"It must be kept in mind that we are dealing with a hybrid case in that the rights and duties as between the injured insured and his uninsured motorist insurance carrier are determined by contract law, and the liability of the uninsured motorist insurance carrier is determined by the legal liability of the uninsured motorist under tort law."

We agree with the *Hammerman* rationale. Appellee's argument provides no basis for denying Patrons the use of the interspousal immunity doctrine as a defense.

This case turns on the trial court's holding the insurance company could not use interspousal immunity to deny Charles Norwood's claim because "[t]he phrase 'legally entitled to recover' does not mean that the insurer stands in the tortfeasor's stead, but simply that the plaintiff must be able to establish fault on the part of the tortfeasor."

Both K.S.A. 40-284 and the insurance policy issued to Maeola Norwood contain the same requirement. Before an insured can recover under the uninsured motorist provisions of the insurance policy, that person must show he or she is "legally entitled to recover" damages from the uninsured motorist. Thus, in the case at bar Charles Norwood must show a legal right to obtain damages from his wife Maeola as a result of the automobile accident.

Although both parties cite numerous cases from other jurisdictions, let us first examine our treatment of the subject. *Sturdy v. Allied Mutual Ins. Co.,* 203 Kan. 783, 457 P.2d 34 (1969), was this court's initial opportunity to discuss K.S.A. 40-284. In that opinion we defined "uninsured motorist coverage" as "protection afforded an insured by first party insurance against bodily injury inflicted by an uninsured motorist, *after the liability of the uninsured motorist for the injury has been established."* (Emphasis added.) 203 Kan. at 785.

Four years later in *Winner v. Ratzlaff,* 211 Kan. 59, 62, 505 P.2d 606 (1973), the issue was "whether it is requisite to recovery against an uninsured motorist liability carrier that judgment first be obtained against the uninsured motorist, that is to say, is the establishment of liability on the part of the uninsured motorist a condition precedent to recovery under an uninsured motorist policy?" There the court found no requirement the claimant must first sue and establish fault of the uninsured motorist before making a claim against the uninsured motorist insurance carrier. The court also construed the phrase "legally entitled to recover as damages" to mean:

"[T]he insured must be able to establish fault on the part of the uninsured motorist which gives rise to the damages and to prove the extent of those damages. This would mean that in a direct action against the insurer the insured has the burden of proving that the other motorist was uninsured, and the amount of this liability. In resisting the claim the insurer would have available to it, in addition to policy defenses compatible with the statute, the substantive defenses that would have been available to the uninsured motorist such as contributory negligence, etc." 211 Kan. at 64.

Arguably, *Winner v. Ratzlaff* has settled the issue. If the insurance company here may use the substantive defenses available to the uninsured motorist in rejecting the insured's claim, Charles Norwood must lose. Interspousal immunity is obviously a substantive defense which Maeola Norwood could have raised as a defense in an action brought by her husband.

However, let us not be too hasty to embrace this conclusion. *Ratzlaff* interpreted the phrase in question in the context of whether the insured had to first file an action against the uninsured motorist before recovering from the insurance carrier. Indeed, in the words of the issue as stated by the court, the holding in *Ratzlaff* was that "establishment of liability on the part of the uninsured motorist" was not "a condition precedent to recovery under an uninsured motorist policy." 211 Kan. at 62. Additionally, subsequent cases have failed to include the *Ratzlaff* language regarding the availability of substantive defenses to the insurance company.

In *Van Hoozer v. Farmers Insurance Exchange,* 219 Kan. 595, 549 P.2d 1354 (1976), this court was again faced with the task of interpreting K.S.A. 40-284. Preliminary to discussion of the issues we noted the "typical" uninsured motorist clause "provides a motorist who carries a standard automobile liability policy with rights against his own insurance company equal to those he would have against the uninsured tortfeasor." 219 Kan. at 600. In *Van Hoozer* the insurance company contended the plaintiff's failure to file a claim in the estate of the uninsured motorist within the applicable period of limitations precluded a finding the insured was legally entitled to recover from the operator of the uninsured vehicle. The court rejected that claim and applied the longer statute of limitations on written contracts to the controversy. "Legally entitled to recover" was interpreted as meaning the "insured must be able to establish fault on the part of the uninsured motorist which gave rise to the damages and to prove

the extent of those damages . . . ." 219 Kan. at 611. This wording was taken directly from Syl. ¶ 3 of *Winner v. Ratzlaff*, 211 Kan. 59. It was repeated in *Welch v. Hartford Casualty Ins. Co.*, 221 Kan. 344, 348-49, 559 P.2d 362 (1977).

Finally, rules of statutory construction weigh in favor of appellee's right to recover herein. K.S.A. 40-284 is remedial in nature and as such should be construed to provide the intended protection. *Van Hoozer v. Farmers Insurance Exchange*, 219 Kan. at 606-07; *Winner v. Ratzlaff*, 211 Kan. at 64. Also, the phrase "legally entitled to recover" should arguably be construed strictly against the insurer. The court stated the rule in *Sturdy v. Allied Mutual Ins. Co.*, 203 Kan. 792:

"This court has held in numerous decisions that an ambiguous insurance policy will be construed strictly against the insurer. Where an insurer prepares its own contracts, it has a duty to make the meaning clear, and if it fails to do so, the insurer and not the insured must suffer. If the terms of a policy of insurance are ambiguous or obscure or susceptible of more than one construction, the construction most favorable to the insured must prevail."

It thus becomes apparent the clause in question is subject to more than one construction.

As an aid in resolving the policy question presented, it is helpful to examine what other jurisdictions have done with the "legally entitled to recover" language. One year before *Ratzlaff*, in *Bachman v. American Mutual Insurance Co. of Boston*, 338 F. Supp. 1372, 1375 (D. Kan. 1972), Judge Theis held K.S.A. 40-284 required "a showing of liability on the part of the uninsured motorist as a prerequisite to recovery under an uninsured motorist provision." *Markham v. State Farm Mutual Automobile Ins. Co.*, 464 F.2d 703 (10th Cir. 1972), dealt with the Oklahoma uninsured motorist statute in terms of that state's parent-child immunity doctrine. The trial court had held "legally entitled to recover damages" meant only that the claimant (mother) had to show negligence on the part of the uninsured motorist (daughter) and resulting damages. The Court of Appeals reversed and held under Oklahoma law the mother never even had a cause of action against her daughter. As such she could not be considered legally entitled to recover damages. See also *Noland v. Farmers Insurance Exchange*, 413 S.W.2d 530 (Mo. App. 1967), where the court interpreted the phrase "legally responsible to pay as damages to the insured" under that state's uninsured motorist statute. The court held Missouri's adherence to the interspousal immunity

doctrine prevented the plaintiff's husband from being held legally responsible for damages and thus absolved the insurance company from liability for plaintiff's damages.

Other jurisdictions have reached different results. Both appellee and the trial court rely on *Allstate Insurance Co. v. Elkins,* 77 Ill. 2d 384, 396 N.E.2d 528 (1979). There Helen Elkins was injured in an automobile driven by her husband, Dorsey. Dorsey was the named insured, but the terms of the policy also included Helen as an insured. Because of a "household exclusion" clause in the policy Dorsey Elkins was considered uninsured with regard to his wife. Helen Elkins then filed a claim under the uninsured motorist section of the policy, which included a "legally entitled to recover" clause.

The lower court held that because of Illinois statutory interspousal immunity provisions Helen Elkins could not be considered legally entitled to recover damages from her husband. The appellate court reversed and its decision was affirmed by the Illinois Supreme Court, which stated:

"We agree with the appellate court that the proper interpretation of the words 'legally entitled to recover' means that the claimant must be able to prove the elements of her claim necessary to entitle her to recover damages. That the tortfeasor uninsured motorist in an action brought against him might be in a position to invoke a defense of limitations or some form of statutory immunity is relevant to the question of the right to enforce payment, but does not affect the claimant's legal entitlement to recovery. In interpreting the provisions of an insurance policy the intent of the parties is the most significant factor and any ambiguity should be construed in favor of the insured." 77 Ill. 2d at 390-91.

See also *Guillot v. Travelers Indem. Co.,* 338 So. 2d 334 (La. App. 1976), where it was held the doctrine of interspousal immunity did not bar the wife's recovery under an uninsured motorist endorsement because the defense was personal to the tortfeasor spouse and thus not available to his insurer.

In the final analysis our decision should be made by weighing the purpose of the uninsured motorist statute against the public policy issue giving rise to the interspousal immunity doctrine of Kansas.

In *Sturdy v. Allied Mutual Ins. Co.,* 203 Kan. at 792, the court stated "the purpose of uninsured motorist insurance is to provide compensation for personal injury to the innocent victim of the uninsured motorist." Similarly, in *Winner v. Ratzlaff,* 211 Kan. at 63-64, it was held:

"The purpose of legislation mandating the offer of uninsured motorist coverage is to fill the gap inherent in motor vehicle financial responsibility and compulsory insurance legislation and this coverage is intended to provide recompense to innocent persons who are damaged through the wrongful conduct of motorists who, because they are uninsured and not financially responsible, cannot be made to respond in damages."

Finally, in *Welch v. Hartford Casualty Ins. Co.,* 221 Kan. at 349, the court cited earlier decisions in formulating the purpose behind K.S.A. 40-284:

"In examining the intent of the legislature we said in *Forrester v. State Farm Mutual Automobile Ins. Co.,* 213 Kan. 442, 517 P.2d 173:
'The intent of the legislature in requiring the mandatory offering of uninsured motorist coverage was to insure that those insured under the contract of insurance would be protected generally against injuries caused by motorists who are uninsured and that such protection would complement the liability coverage.' (Syl. 3.)
"In the recent case of *Van Hoozer v. Farmers Insurance Exchange,* 219 Kan. 595, 549 P.2d 1354, we examined the statute and stated:
'  .   .   . Uninsured motorist coverage was developed as a means of protecting the non-negligent motorist where the tortfeasor is uninsured. The typical clause provides a motorist who carries a standard automobile liability policy with *rights* against his own insurance company *equal to those* he would have against the uninsured tortfeasor.   .   .   .' (p. 600. Emphasis supplied.)"

If the purpose of the uninsured motorist statute is to afford the same protection to a person injured by an uninsured motorist as he or she would have enjoyed if the offending motorist had carried liability insurance, it makes sense to deny Charles Norwood's claim. Under the doctrine of interspousal immunity he could not have recovered from his wife regardless of whether she carried liability insurance.

The basis for the doctrine of interspousal immunity was stated in *Guffy v. Guffy,* 230 Kan. at 93:

"[T]he foremost justification for immunity is based on the premise that personal tort actions between husband and wife would disrupt and destroy the peace and harmony of the home and this would be contrary to the public policy of the State."

In balancing the public policy of providing liability insurance coverage for all drivers against that of preserving the peace and harmony of the home the former must give way. *Guffy* balanced the same issues and came down on the side of interspousal immunity. We are bound by that decision. We conclude Charles Norwood is not "legally entitled to recover" damages from his

spouse and the uninsured motorist provision of her insurance policy does not apply.

The judgment of the trial court is reversed.

PRAGER, J., dissenting.