No. 96,173

JAMES STEMPLE, *Plaintiff*, v. MARYLAND CASUALTY COMPANY, *Defendant.*

144 P.3d 1273

Opinion filed October 27, 2006.

*Kala Spigarelli,* of The Spigarelli Law Firm, of Pittsburg, argued the cause and was on the brief for plaintiff.

*Jonathan W. Davis,* of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, argued the cause, and *Richard T. Merker,* of the same firm, was with him on the brief for defendant.

The opinion of the court was delivered by

NUSS, J.: James Stemple received workers compensation benefits from his employer, F&S Supply, for injuries caused by a non-employee. After also receiving remuneration from the tortfeasor's liability insurance carrier, Stemple then sued his employer's underinsured motorist (UIM) carrier for benefits based upon his use of a company car at the time of the accident. The UIM carrier, Maryland Casualty Company (Maryland Casualty), argued that recovery of the UIM benefits was barred by the exclusivity provision of the workers compensation statute, K.S.A. 44-501(b). Stemple generally responded that the provision had no application to these facts.

Judge Julie Robinson of the United States District Court for the District of Kansas then certified the following question for determination by this court, pursuant to K.S.A. 60-3201:

Does the exclusivity provision of K.S.A. 44-501(b) bar Stemple's recovery against his employer's insurance company for

underinsurance coverage when Stemple has already received workers compensation benefits from his employer?

We hold that under these facts, the exclusivity provision does not bar Stemple from recovery of UIM benefits.

## FACTS

The relevant facts set out in Judge Robinson's Memorandum and Order Certifying Question of State Law to the Kansas Supreme Court are as follows:

"On April 8, 2003, plaintiff James Stemple was struck by an automobile while working for his employer, F & S Supply. Plaintiff had stopped the vehicle he was driving and was retrieving items from the back of the vehicle when another vehicle, owned by Drew Ivey, began rolling down a hill and struck plaintiff from behind causing him serious injury. After making a claim against Ivey for his negligence, plaintiff settled with Ivey's insurance company for $100,000, the limit under Ivey's liability policy. Plaintiff also made a claim against F & S Supply for workers' compensation and was awarded $31,986.44 from his employer's workers' compensation carrier, Liberty Mutual. The vehicle that plaintiff was standing behind when the accident occurred was owned by F & S Supply and insured by defendant Maryland Casualty Company under a policy that includes underinsured coverage. Plaintiff filed suit in the District Court of Neosho County, Kansas, against Maryland Casualty Company pursuant to the underinsured provisions of his employer's insurance policy for damages plaintiff received in excess of his $100,000 settlement with Ivey. Defendant removed this action on August 11, 2005 based on diversity jurisdiction." *Stemple v. Maryland Casualty Co.*, 2005 WL 3489510 (D. Kan. 2005) (Unpublished opinion.).

Stemple has reimbursed the workers compensation carrier, Liberty Mutual, according to its subrogation rights under K.S.A. 44-504(b).

## ANALYSIS

Question: *Does the exclusivity provision of K.S.A. 44-501(b) bar Stemple's recovery against his employer's insurance company for underinsurance coverage when Stemple has already received workers compensation benefits from his employer?*

*Standard of Review*

"A certified question of law is reviewed using an unlimited standard. [Citation omitted.]" *Farmers Ins. Co. v. Southwestern Bell*

*Tel. Co.*, 279 Kan. 976, 977, 113 P.3d 258 (2005). Additionally, to the extent resolution of this issue necessitates interpretation of statutes, this court's review is unlimited. *Schmidtlien Electric, Inc. v. Greathouse*, 278 Kan. 810, 819, 104 P.3d 378 (2005).

*Discussion*

The appellate arguments of the parties are set forth in detail in Judge Robinson's opinion and will only be repeated as necessary for resolution of the certified question.

As an overview, we observe that several statutes are in play. The first is found in the Workers Compensation Act, K.S.A. 44-501 *et seq.* Subsection (a) of K.S.A. 44-501 provides some general conditions under which an employer is liable to its employee for workers compensation benefits:

"(a) If in any employment to which the workers compensation act applies, *personal injury by accident* arising out of and in the course of employment is caused to an employee, *the employer shall be liable to pay compensation to the employee* in accordance with the provisions of the workers' compensation act . . . ." (Emphasis added.)

Subsection (b) of 44-501 provides, however, that workers compensation is an exclusive remedy:

"(b) Except as provided in the workers compensation act, *no employer*, or other employee of such *employer*, *shall be liable for any injury for which compensation is recoverable under the workers compensation act* nor shall an *employer* be liable to any third party for any injury or death of an employee which was caused under circumstances creating legal liability against a third party and for which workers compensation is payable by such *employer*." (Emphasis added.)

The other relevant statute is found in the insurance code, K.S.A. 40-101 *et seq.* Subsection (a) of K.S.A. 40-284 specifically deals with uninsured motorist insurance (UM) coverage:

"(a) No automobile liability insurance policy covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state . . . unless the policy contains or has endorsed thereon, a provision with coverage limits equal to the limits of liability coverage for bodily injury or death in such automobile liability insurance policy sold to the named insured for payment of part or all sums which *the insured or the insured's legal representative shall be legally entitled to recover as damages from the uninsured owner or operator* of a motor vehicle because of bodily injury . . . caused by

accident and arising out of ownership, maintenance or use of such motor vehicle." (Emphasis added.)

Subsection (b) of 40-284 similarly deals with underinsured motorist insurance (UIM) coverage:

"(b) Any uninsured motorist coverage shall include an *underinsured* motorist provision which *enables the insured or the insured's legal representative to recover from the insurer the amount of damages* for bodily injury or death to which *the insured is legally entitled* from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided by such uninsured motorist coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle." (Emphasis added.)

Subsection (e) of 40-284 deals with the option of crafting certain exclusions from, or limitations to, UM and UIM coverage:

"(e) Any insurer may provide for the exclusion or limitation of coverage:

. . . .

(4) to the extent that workers' compensation benefits apply."

Generally, Kansas law has evolved into treating UM and UIM coverage as a hybrid—a combination of contract and tort. In *Winner v. Ratzlaff*, 211 Kan. 59, 505 P.2d 606 (1973), this court addressed a widower initially suing a driver in tort for his wife's wrongful death. When he learned the defendant was uninsured, he joined his wife's UM carrier in a contract action. When he tried to dismiss the tort action against the driver and proceed in contract against the UM carrier, the district court refused, requiring the action to proceed in tort with no mention to the jury of the UM carrier defendant or the fact of insurance. This court reversed and remanded, and in the process made several important determinations.

It defined the phrase "legally entitled to recover as damages" contained in K.S.A. 40-284(a):

"We construe the words '*legally entitled to recover as damages*' to mean simply that the insured must be able to establish fault on the part of the uninsured motorist which gives rise to the damages and to prove the extent of those damages. This would mean that in a direct action against the insurer the insured has the burden of proving that the other motorist was uninsured, *that the other motorist is legally liable for damage to the insured, and the amount of this liability.*" (Emphasis added.) 211 Kan. at 64.

This court also described the defendant's rights: "In resisting the claim the insurer would have available to it, in addition to policy defenses compatible with the statute, the substantive defenses that would have been available to the uninsured motorist such as contributory negligence, etc." 211 Kan. at 64.

Additionally, this court clarified that it is unnecessary that judgment first be obtained against the uninsured motorist in order to recover against an uninsured motorist liability carrier. A plaintiff with an uninsured motorist claim actually has three choices of suits:

> "[1] He may file an action directly against his uninsured motorist liability carrier without joining the uninsured motorist as a party defendant; [2] he may file an action joining both the insurer and the uninsured motorist as party defendants; or, [3] he may file an action against the uninsured motorist alone without joining the insurer as a party defendant. *In each of these options, he may litigate all of the issues of liability and damages.*" (Emphasis added.) 211 Kan. at 65.

Confirmation and elaboration came 3 years later in *Van Hoozer v. Farmers Insurance Exchange*, 219 Kan. 595, 549 P.2d 1354 (1976). There, this court struck down a provision of an insurance policy that attempted to reduce uninsured motorist coverage by the amount of the recovery of any workers compensation benefits, finding that it was an unauthorized attempt to limit or dilute the statutorily mandated UM coverage. We reiterated our holding in *Winner*, among other things observing that the plaintiff could maintain an action in contract directly against the uninsured motorist insurance carrier. We also held that the 5-year statute of limitations on written contracts (K.S.A. 60-511) was therefore applicable. 219 Kan. at 611. Finally, we observed that "[t]he typical [UM] clause provides a motorist who carries a standard automobile liability policy with rights against his own insurance company equal to those he would have against the uninsured tortfeasor." 219 Kan. at 600.

The next year, in *Hammerman v. Southwestern Ins. Group*, 1 Kan. App. 2d 445, 571 P.2d 1 (1977), the Court of Appeals reviewed the language and holdings in *Winner*, *i.e.*, the three options for an insured's suit for recovery of UM benefits and the determination that in each option a plaintiff could "litigate all of the issues of liability and damages." 1 Kan. App. 2d at 447. It also

acknowledged that "[a]n action instituted by an insured against his uninsured motorist insurance carrier for personal injuries sustained as the result of the negligence of an uninsured motorist is clearly an action for damages brought upon a contract of insurance." 1 Kan. App. 2d at 448. But the Court of Appeals described such an action as a "hybrid":

> "It must be kept in mind that we are dealing with a hybrid case in that the rights and duties as between the injured insured and his uninsured motorist insurance carrier are determined by contract law, and *the liability of the uninsured motorist insurance carrier is determined by the legal liability of the uninsured motorist under tort law.*" (Emphasis added.) 1 Kan. App. 2d at 448.

In *Patrons Mutual Ins. Ass'n v. Norwood*, 231 Kan. 709, 647 P.2d 1335 (1982), this court applied the Court of Appeals' hybrid analytical model. There, a husband was injured while a passenger in a car driven by his wife. He filed a claim for damages against his wife under her liability policy. When that claim was denied on the grounds of interspousal tort immunity, he made a claim for uninsured motorist protection, arguing that his wife, although insured, was uninsured as to him because of the immunity.

After the court examined case law, among other things it rejected the husband's argument that because an insured's claim against the uninsured motorist insurance carrier is based on *contract*, and the interspousal immunity doctrine applies only to actions for *tortious* personal injury, the tort defense should not be available to the insurance carrier in a *contract* action. As support, this court "agreed with the *Hammerman* [hybrid] rationale," *i.e.*, "the rights and duties as between the injured insured and his uninsured motorist insurance carrier are determined by contract law, and the liability of the uninsured motorist insurance carrier is determined by the legal liability of the uninsured motorist under tort law." 231 Kan. at 712. This court therefore allowed this "tort" defense in a contract action because the underlying liability through the contract was based upon tort: "Appellee's [husband] argument provides no basis for denying [insurance carrier] the use of the interspousal immunity doctrine as a defense." 231 Kan. at 712. As a result, the husband's claim was barred by interspousal immunity,

*i.e.,* he was not "legally entitled to recover" damages from his spouse and the UM provision of her insurance policy did not apply.

Nine years later, in *Chance v. Farm Bureau Mut. Ins. Co., Inc.,* 756 F. Supp. 1440 (D. Kan. 1991), the United States District Court of Kansas relied upon several of these Kansas cases to resolve a tension between UM insurance and workers compensation. There, Chance was a passenger in a car owned and driven by his coemployee Stover that was involved in an accident. Chance was injured and received workers compensation benefits from his employer. Because the exclusivity provision of workers compensation law barred an injury action against his negligent coemployee Stover, he sued Stover's UM carrier, Farm Bureau, for his injuries. Chance essentially claimed that because Stover was immune from suit, Stover was uninsured, entitling him—as an insured under the policy because he was a car occupant—to uninsurance benefits. After reviewing Kansas law, the federal court disagreed.

The *Chance* court first discussed *Patrons Mutual Ins. Ass'n v. Norwood,* observing that the *Norwood* court considered that

"[i]n order to recover uninsured motorist benefits under K.S.A. 40-284, one must show that he or she is 'legally entitled to recover damages' from the uninsured motorist. After tracing the history of uninsured motorist insurance, the [*Norwood*] court concluded that 'legally entitled to recover' means a claimant must prove the insured motorist is legally liable to him or her for damages in spite of all substantive defenses." 756 F. Supp. at 1443.

The court then turned to *Winner v. Ratzlaff,* examining the language set forth earlier in this opinion construing the phrase "legally entitled to recover as damages." This language included: " 'In resisting the claim the insurer would have available to it, in addition to policy defenses compatible with the statute, the substantive defenses that would have been available to the uninsured motorist such as contributory negligence, etc.' " 756 F. Supp. at 1443 (quoting *Winner v. Ratzlaff,* 211 Kan. at 64).

Based upon this review of Kansas authorities, the *Chance* court concluded that the UM action was barred:

"If the insurance company can assert any defense that would have been available to the uninsured motorist (in the case at bar the exclusive remedy of the workers' compensation scheme), then an injured person cannot recover from the

insurance company when [the injured person] could not recover against the tortfeasor." 756 F. Supp. at 1443.

Based upon the rationale and holdings of this case law, we conclude that in the instant case, Maryland Casualty is entitled to assert against Stemple any substantive defense of tortfeasor Ivy's. Unlike the tortfeasor in *Chance*, however, tortfeasor Ivy is not a coemployee of Stemple. See K.S.A. 44-501(b) ("[N]o employer, or other employee of such employer, shall be liable for any injury for which compensation is recoverable."). Accordingly, the exclusivity of workers compensation is not an available defense of Ivy's and, by extension, is not an available defense for Maryland Casualty. For the limited purpose of answering the instant case's certified question, we see no practical difference between the "legally entitled to recover" language in K.S.A. 40-284(a) regarding UM coverage and the similar language in K.S.A. 40-284(b) regarding UIM coverage.

Maryland Casualty has urged us to follow *Berger v. H.P. Hood, Inc.*, 416 Mass. 652, 624 N.E.2d 947 (1993), whose holding and rationale were affirmed in *National Union Fire Ins. v. Figaratto*, 423 Mass. 346, 667 N.E.2d 877 (1996). Like the instant case, in both cases the Supreme Judicial Court of Massachusetts addressed the right of an employee who is entitled to workers compensation benefits also to collect underinsurance benefits under his employer's automobile policy because an underinsured motorist caused the job-related injury. In both cases, the court held that the exclusivity provision of the workers compensation act barred the employee's claim for UIM benefits against the employer's insurers.

The Massachusetts cases appear to rest upon several points. In one, the court characterized the insurance company as the alter ego of the insured employer, which under state statute had no obligation to provide benefits beyond those of the workers compensation law. See *Figaratto*, 423 Mass. at 348-49. "Any suit against [the insurers] is essentially a suit against [the employer], as owner of the policies." *Berger*, 416 Mass. at 657. Because the exclusivity provision barred an action against the employer, its insurer was also free from liability.

In another point, the Massachusetts court rejected the injured workers' argument that they were merely asserting a contractual right to recover underinsured motorist benefits from the employers which, because it was not a tort, was not precluded by the workers compensation act. The *Berger* court acknowledged that under Massachusetts law, the key to whether workers compensation precludes a common-law right of action lies in the nature of the plaintiff's injury. After determining that the underinsured motorist claim arose out of the same incident—a personal injury in the course of employment—which resulted in the payment of the workers compensation, the *Berger* court held: "Merely characterizing the claim as contractual does not alter the essential nature of this common law claim. Hood [employer], if required to pay UM [Massachusetts underinsured] benefits, still would be paying a worker for an injury sustained in the course of employment." 416 Mass. at 655.

Kansas statutes and more than 30 years of case law demonstrate a different approach and result. In cases concerning UM/UIM coverage, Kansas appellate courts do not exclude contract considerations from tort considerations; rather, we utilize the hybrid model. And rather than looking at the essential nature of the plaintiff's claim, when specifically faced with the interplay of workers compensation and UM coverage, the *Chance* court instead utilized the hybrid model. Based upon our case law, that approach remains sound.

Additionally, the language of K.S.A. 44-501(b) is very clear: "[N]o employer, or other employee of such employer, shall be liable for any injury for which compensation is recoverable." It says nothing of the employer's "alter ego" or "insurance company." When a statute is plain and unambiguous, we will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. *State ex rel. Graeber v. Marion County Landfill, Inc.,* 276 Kan. 328, 339, 76 P.3d 1000 (2003).

We would be remiss in reading additional language into this statute because the legislature has clearly spoken elsewhere to the contrary. After this court in *Van Hoozen* struck down a provision

of an insurance policy that attempted to reduce uninsured motorist coverage by the amount of the recovery of any workers compensation benefits, "the legislature amended 40-284(e) to allow reduction of uninsured motorist coverage by workers compensation benefits." See *Allied Mut. Ins. Co. v. Gordon*, 248 Kan. 715, 729, 811 P.2d 1112 (1991). The result of the legislature's reaction is consistent with this court's holding in *Winner v. Ratzlaff*, 211 Kan. at 65, *i.e.*, "in resisting the [UIM] claim the insurer would have available to it . . . *policy* defenses compatible with the *statute*." (Emphasis added.) For Maryland Casualty's desired result in this case, it need only place such exclusionary or limiting language in its policy—which is not before this court. Accordingly, we will not interfere with the legislature's crafted scheme as articulated in the clear language of K.S.A. 44-501(b) and 40-284(e).

We do not adopt the Massachusetts rationale and holdings.

Therefore, the answer to the certified question is: The exclusivity provision of K.S.A. 44-501(b) does not bar an injured worker's recovery against the employer's insurance company for underinsurance coverage when he or she has already received workers compensation benefits from the employer.

DAVIS, J., not participating.

MARQUARDT, J., assigned.