SHAHOOD, J.
Appellees, Edward Rose and Darlene Rose (“the Roses”), brought an action against Joseph Concillo (“Concillo”) and Josephine Amaris Concillo for damages incurred in an automobile accident. The Roses’ uninsured/underinsured (“UM/UIM”) motorist carrier, Aetna Casualty and Surety Company (“Aetna”), was also named as a defendant. In addition, since the accident occurred while Edward Rose was in the course and scope of his employment, he filed a separate claim against Aetna, which also happened to be his employer’s workers’ compensation carrier. In November 1997, an agreed order was entered allowing the complaint to be amended to reflect Aetna’s name change to The Travelers Property and Casualty Company (“Travelers”), as a result of a merger with Metrix South and Travelers.
During the course of the litigation, Con-cillo’s liability carrier, Allstate, tendered its policy limits of $100,000 to the appel-lees. Pursuant to section 627.727, Florida Statutes, appellees requested that their UM/UIM carrier, Aetna, permit them to accept the policy limits. Aetna refused permission to settle and, instead, chose to pay appellees $100,000. Appellants, Me-trix South and Travelers, the workers’ compensation carriers, then filed a notice of lien seeking equitable distribution of the $100,000 which Aetna had paid to appel-lees. Appellees filed a Motion to Determine Entitlement to Equitable Distribution claiming that the $100,000 payment was UM proceeds not subject to equitable distribution. Following a hearing, the court granted appellees’ motion finding that the proceeds were UM proceeds, not subject to equitable distribution.
On appeal, appellants do not dispute that UM benefits can not be subject to an equitable distribution lien by the workers’ compensation carrier. See Volk v. Gallopo, 585 So.2d 1163 (Fla. 4th DCA 1991). Rather, they argue that the trial court incorrectly characterized the $100,000 payment as UM/UIM benefits instead of settlement proceeds, even though the money was paid by the UM/UIM carrier. We agree.
Section 440.39(3)(a), Florida Statutes (1997) states that in actions by the employee against a tortfeasor, the employee or his representative “shall sue for the employee individually and for the use and benefit of the employer, if a self insurer, or employer’s insurance carrier, in the event compensation benefits are claimed or paid.... ” Id. The statute further provides that the carrier may file in the suit a notice of payment of compensation and medical benefits to the employee, and that such notice shall constitute a lien against any judgment or settlement ultimately recovered by the employee. Id. “The determination of the amount of the ... carrier’s recovery shall be made by the judge in the trial court upon application therefor and notice to the adverse party.” Id.
In Volk, this court held that UM/UIM benefits recovered by the employee could not be included in the formula to compute the amount of the workers’ compensation carrier’s equitable distribution lien. 585 So.2d at 1166-67. The basis for the holding was that a plain reading of section *1261 440.39(3)(a), Florida Statutes precludes a workers’ compensation carrier from bene-fitting from UM coverage. Id. at 1166; see also § 627.727(1), Fla. Stat. (1997)(stat-ing that UM “coverage shall not inure directly or indirectly to the benefit of any workers’ compensation ... carrier....”) Since section 440.39(3)(a), Florida Statutes, provides that the workers’ compensation carrier shall recover from the judgment “[i]n all claims or actions at law against a third-party tortfeasor,” and the UM carrier is not a third-party tortfeasor, the Volk court concluded that UM benefits should not be included in the equitable distribution formula. Id. at 1166.
Section 627.727(6), Florida Statutes, outlines the procedure to be followed when the injured party and the tortfeasor agree to settle the claim for less than the total claim for damages, thus activating the UM provision. Pursuant to the law, the injured party must first give his UM carrier written notice of the proposed settlement. § 627.727(a), Fla. Stat. (1997). Thereafter, the UM carrier has 30 days after receipt of the notice to either grant or deny permission to settle. Id. If permission is granted, the injured party “may execute a full release in favor of the underinsured motorist’s liability insurer and its insured and finalize the proposed settlement without prejudice to any underinsured motorist claim.” Id. If permission is denied, and the UM carrier chooses to preserve its right of subrogation, the carrier must pay the injured party the amount of the written offer of settlement. § 627.727(6)(b), Fla. Stat. (1997). The UM carrier may then settle the UM claim and seek subro-gation against the underinsured motorist and his liability insurer for the amount paid to the injured party. Id.
Prior to a 1992 amendment, section 627.727 did not contain the provision requiring the UM carrier to pay the amount of the settlement offer to the injured party. The statute was most likely amended to provide the injured party with immediate access to compensation in situations in which the UM carrier denied settlement in order to preserve its subrogation rights. See generally Hassen v. State Farm Mut. Auto. Ins. Co., 674 So.2d 106, 110 (Fla.1996). In this manner, the financial burden is shifted from the injured party to the UM carrier. Id.
Based on the language in sec. 627.727(1) and the discussion in Volk, the prohibition against allowing a workers’ compensation carrier to benefit from UM coverage is a clear legislative objective. Equally as clear is the legislature’s intent to immediately compensate an injured party while, at the same time, allow the UM carrier to preserve its subrogation rights. The need for UM benefits does not arise unless and until the injured party is first compensated by the uninsured motorist in an amount (settlement) that does not fully satisfy the damages claim. There is no question that, if the UM carrier approves a settlement, those proceeds are not considered UM benefits.
Logically, then, the fact that the UM carrier denies authority to settle, and pays the injured party an amount equal to the settlement offer in order to preserve its subrogation rights should not automatically convert the proceeds from settlement proceeds to UM benefits. In fact, in order to give full effect to the legislature’s expressed intentions, the settlement amount in the latter scenario must be just that, a settlement, and not UM benefits. Any other characterization would sacrifice the workers’ compensation carrier’s right to compensation in favor of the UM carrier’s right to preserve its subrogation rights, and unjustly enrich the injured party by allowing him to receive workers’ compensation benefits, as well as compensation from the tortfeasor, for the same injuries.
Based on the foregoing, we conclude that the trial court erred in characterizing the $100,000 payment to appellees as UM benefits and not a judgment or settlement recovered by the employee. The matter is, therefore, reversed and remanded with directions that the $100,000 settlement *1262 proceeds be included in the formula for calculating the workers’ compensation carrier’s compensation.
REVERSED AND REMANDED WITH DIRECTIONS.
GUNTHER and GROSS, JJ., concur.