No. 85,980

PAUL LOUCKS, *Plaintiff/Appellee*, v. GALLAGHER WOODSMALL, INC., and KANSAS AUTO DEALERS WORKERS' COMPENSATION FUND, *Defendants/Appellants*.

FARM BUREAU MUTUAL COMPANY, INC., *Appellee*.

(35 P.3d 782)

Opinion filed December 7, 2001.

*Stephen L. Brave,* of Klenda, Mitchell, Austerman & Zuercher, L.L.C., of Wichita, argued the cause, and *Alan D. Herman,* of the same firm, and *Patrick R. Barnes,* of Scott, Quinlan, Willard and Barnes, L.L.C., of Topeka, were with him on the briefs for appellants.

*Gerald W. Scott,* of Wichita, argued the cause and was on the brief for appellee Loucks.

*Paul Hasty, Jr.,* of Wallace, Saunders, Austin, Brown & Enoch, Chtd., of Overland Park, argued the cause and was on the brief for appellee Farm Bureau Mutual Insurance Company, Inc.

The opinion of the court was delivered by

SIX, J.: This case considers the interplay between a K.S.A. 44-504(b) workers compensation subrogation lien and a K.S.A. 40-284(f) underinsured motorist (UIM) substitute payment. The defendants, Gallagher Woodsmall, Inc. (Gallagher) and the Kansas Auto Dealers Workers Compensation Fund (the Fund), paid workers compensation benefits to Paul Loucks, plaintiff, who was injured in the course of his employment. The question for review is whether the defendants' K.S.A. 44-504(b) lien attaches to a K.S.A. 40-284(f) substitute payment made to Loucks by Farm Bureau Mutual Insurance Company, Inc., (Farm Bureau), his UIM carrier. Loucks claims that he is entitled to the return of the payment he voluntarily made to the defendants to satisfy the Fund's K.S.A. 44-504(b) subrogation lien.

The district court, reasoning that Loucks' voluntary payment to the defendants was made under a mutual mistake of law, held that the Fund's workers compensation lien did not attach to Farm Bureau's substituted payment. The district court concluded that Loucks was entitled to a judgment in the amount he had paid to the defendants, plus interest.

Our jurisdiction is under K.S.A. 20-3018(c) (transfer on our own motion).

The first impression issue for Kansas is whether a K.S.A. 44-504(b) workers compensation subrogation lien attaches to a K.S.A. 40-284(f) substitute payment by a UIM carrier. The answer is "yes." The district court is reversed.

The other appellate issues raised by the defendants (whether the district court erred in: (1) denying the defendants' motion for summary judgment, (2) finding a mutual mistake of law existed, (3) refusing to grant the defendants' motion to amend the pretrial order, (4) granting Loucks' motion for reconsideration, and (5) refusing to admit evidence proffered by the defendants at trial) are moot by our resolution of the K.S.A. 40-284(f) substitute payment issue.

## FACTS

On January 14, 1995, Loucks, acting in the course and scope of his employment with Burtis Motor Company, was injured in an automobile accident. The other driver, Deciderio Celiz, was insured under auto policies with aggregate limits of $50,000 in liability coverage. Loucks' Farm Bureau policy provided UIM limits of $300,000.

In August 1996, Loucks filed a claim for workers compensation benefits. He was represented by the law firm of Patton, Kerbs, and Hess, of Dodge City, Kansas. The Fund paid workers compensation benefits to Loucks. At the time, Gallagher was the claims administrator for Loucks' employer and the Fund. JoAnn Rickner was the claims adjuster who handled the workers compensation claim for Gallagher.

Loucks filed a negligence action against Celiz in January 1997. Before suing, he settled his workers compensation claim for a lump sum of $36,207.27. The Fund then had a K.S.A. 44-504(b) workers compensation lien against the recovery in the third-party tort action. Loucks' settlement with the Fund expressly recognized that the Fund's lien pertained to recoveries against responsible third parties. However, UIM benefits or substitute payments were not addressed in the settlement.

Later, Celiz' liability insurers offered to settle Loucks' claims against Celiz for policy limits, reaching a tentative settlement for $50,000. Loucks' attorney, Leslie Hess, notified Farm Bureau of the tentative settlement. Farm Bureau, to preserve its UIM subrogation rights against Celiz, substituted its payment under K.S.A. 40-284(f) for the payment from the liability carriers to Loucks of the $50,000 tentative settlement.

Hess wrote to Rickner in October 1997, sending Rickner a copy of Hess' contingent fee agreement with Loucks and advising Rickner that Farm Bureau's substitute payment of $50,000 should be made payable to Hess and Loucks. Hess said that payment of the Fund's workers compensation subrogation lien, less prorated expenses and attorney fees, would be paid from the proceeds of the Farm Bureau check. The same day, a second letter was faxed to Rickner, stating that the total amount to be paid to the Fund was $21,260.92. Rickner faxed an acknowledgment of the agreement with Hess regarding reimbursement and the claim total and confirmed that reimbursement to the Fund would be made from the Farm Bureau funds placed in Hess' trust account.

Farm Bureau made the $50,000 substitute payment. Hess paid $21,260.82 of the Farm Bureau substitute payment to Gallagher, for the Fund, in satisfaction of the Fund's K.S.A. 44-504(b) lien. This amount reflected an allowance for Hess' 40% contingent attorney fee and a reimbursement of 72% to Hess for the then-incurred expenses.

Nineteen months later, Hess wrote to Gallagher advising that she believed she had erroneously reimbursed the Fund from Farm Bureau's substitute payment. Hess requested return of the payment (less $772.57, an expense reimbursement extended to her). She supported her request by enclosing a copy of the Kansas Bar Association Journal article by Gerald W. Scott and citing *Knight v. Insurance Co. of North America*, 647 F.2d 127 (10th Cir. 1981). See Scott, *Uninsured/ Underinsured Motorist Insurance: A Sleeping Giant*, 63 J. Kan. B.A. 28, 39 (May 1994).

Gallagher denied the request. Loucks sued defendants, alleging that the payment of $21, 260.82 was made by mutual mistake based

on the belief that the Fund was entitled to reimbursement from Farm Bureau's UIM substitute payment.

A pretrial conference order was entered in March 2000 stipulating that all necessary and indispensable parties were parties to the action. The defendants filed a motion for summary judgment. The district court denied the defendants' claim that they were entitled to judgment as a matter of law on the issues of mistake and attachment of the workers compensation lien to Farm Bureau's substitute payment. In reaching his decision, the district judge found a mutual mistake of law made by Hess and Rickner. He concluded that the substitute UIM payment was not an appropriate source for satisfaction of the Fund's workers compensation lien under either Kansas statutes or under Farm Bureau's UIM contract with Loucks.

The district court granted the defendants' motion to join Farm Bureau as a necessary and indispensable party. The defendants then filed a cross-claim and third-party petition against Farm Bureau. Loucks filed a motion to reconsider the joinder order. Farm Bureau filed a motion to dismiss. The district court granted Loucks' motion to reconsider, dismissed Farm Bureau and denied the defendants' alternative request to stay the case. Farm Bureau was no longer in the case.

At a bench trial in August 2000, judgment was entered in favor of Loucks for $20,488.25, plus interest. The defendants appealed.

Farm Bureau, an appellee here, agrees with the defendants that their K.S.A. 44-504(b) subrogation lien for the workers compensation payment attached to Farm Bureau's K.S.A. 40-284(f) substitute payment.

## DISCUSSION

This case is to be decided by interpreting K.S.A. 44-504 and K.S.A. 40-284, which leads us directly to the cardinal question: Does a K.S.A. 44-504(b) workers compensation subrogation lien attach to the UIM substitute payment made by Farm Bureau? We first turn to the two statutes that are not only key players in settling the parties' conflicting contentions, but assist us in answering this question in the affirmative.

K.S.A. 44-504(a) and (b) provide in part:

"(a) When the injury . . . for which compensation is [paid] under the workers compensation act was caused under circumstances creating a legal liability against some person other than the employer . . . to pay damages, the injured worker. . . shall have the right to . . . pursue a remedy by proper action in a court of competent jurisdiction against such other person.

"(b) In the *event of recovery from* [another] person by the injured worker . . . *by judgment, settlement or otherwise,* the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer to the date of such recovery and shall have a lien therefor against the entire amount of such recovery . . . ." (Emphasis added.)

K.S.A. 40-284(f) provides, in part:

"An underinsured motorist coverage insurer shall have subrogation rights under the provisions of K.S.A. 40-287 and amendments thereto. If a tentative settlement agreement to settle for liability limits has been reached with an underinsured tortfeasor, written notice must be given . . . to the underinsured motorist coverage insurer by its insured. . . . Within 60 days of receipt of this written notice, the underinsured motorist coverage insurer may substitute its payment to the insured for the tentative settlement amount. The underinsured motorist coverage insurer is then subrogated to the insured's right of recovery to the extent of such payment and any settlement under the underinsured motorist coverage."

Statutory interpretation involves a question of law over which we have unlimited review. *Hamilton v. State Farm Fire & Cas. Co.,* 263 Kan. 875, 879, 953 P.2d 1027 (1998). The intent of K.S.A. 44-504(b) is two-fold: (1) to preserve injured workers claims against third-party tortfeasors and (2) to prevent double recoveries by injured workers. *Wishon v. Cossman,* 268 Kan. 99, Syl. ¶ 1, 991 P.2d 415 (1999). Employers are granted subrogation liens on tort recoveries by injured workers. See 268 Kan. at 104.

We have not previously addressed the issue of whether a K.S.A. 44-504(b) workers compensation subrogation lien attaches to a substitute payment made by a UIM carrier under K.S.A. 40-284(f). Loucks' attorney, Leslie Hess, provided Farm Bureau with notice of a tentative settlement reached with Celiz. Farm Bureau declined to grant permission for Loucks to settle and, instead, substituted its payment for that of Celiz' liability carriers. Loucks acknowledges in his brief that the tortfeasor's $50,000 remains unpaid and is subject to the defendants' lien. The parties agree that if the pay-

ment had been made directly by Celiz' insurers, the defendants would have a lien in the amount paid and would be entitled to satisfaction of their workers compensation lien. Farm Bureau contends that the same conclusion should hold true when a UIM carrier substitutes payment for the liability carrier.

The defendants agree. Under K.S.A. 40-284(f), a substitute payment by a UIM carrier is not a payment of UIM "benefits." Rather, a substitute payment is a recovery under K.S.A. 44-504(b). The defendants assert that the workers compensation lien created by K.S.A. 44-504(b) should apply because the sums paid by the UIM carrier are "simply sums which have been substituted for liability insurance which, undisputedly, is subject to the lien." Moreover, the defendants contend that a substitute payment is a consequence of the remedy pursued by the injured worker against those having legal liability to the worker. We agree. Here, the Farm Bureau substitute payment to Loucks was made in place of payments to Loucks from Celiz' liability carriers. The latter payments unquestionably would be subject to the Fund's lien. We see no meaningful distinction, under the facts here, between the Farm Bureau substituted payment and payments from Celiz' liability carriers.

The district court found that *Knight* controlled. See 647 F.2d 127. Because *Knight* was characterized as dispositive by Loucks in justifying his request for the return of his voluntary payment, and by the district court in ordering that the payment be returned, an examination of *Knight* is required.

Knight was injured in a collision with an *uninsured* motorist (UM) while driving a vehicle of his employer Garrett-Jones. Knight received $16,043.63 from Insurance Co. of North America (INA), the workers compensation carrier for Garrett-Jones. Knight then sought to recover additional funds because of a separate UM policy that his employer had with INA. The UM limit was $15,000. The federal district court held that INA was subrogated to the extent of the amount it had paid out as workers compensation on any recovery Knight might have had upon the UM policy. The Tenth Circuit Court of Appeals disagreed, reasoning that K.S.A. 44-504 was only intended to cover actions against third parties sounding in tort. Workers compensation subrogation rights and liens do not

extend to actions based on UM policies because such actions "sound in contract." 647 F.2d at 128. *Knight* noted that many other jurisdictions have found that a workers compensation carrier's subrogation rights do not extend to actions based on UM policies. 647 F.2d at 128. See, *e.g.*, *Courson v. Maryland Casualty Co.*, 475 F.2d 1030 (8th Cir. 1973); *State Farm Mutual Automobile Ins. Co. v. Cahoon*, 287 Ala. 462, 252 So. 2d 619 (1971); *Travelers Ins. Co. v. Natl. Farmers Union*, 252 Ark. 624, 480 S.W.2d 585 (1972). The *Knight* court said:

"The common thread of analysis in all these cases is that under workmen's compensation statutes with similar language subrogation is allowed only for actions in tort; and actions based on uninsured motorist policies sound in contract, not tort. These principles square with Kansas law." 647 F.2d at 128-29.

It appears that *Knight* focused on the language in what is now K.S.A. 44-504(c) which states: "Failure on the part of the injured worker . . . to bring such action within the time herein specified, shall operate as an assignment to the employer of any cause of action in tort which the worker . . . may have against any other party . . . ." See 647 F.2d at 128.

Under the reasoning in *Knight*, the district court here concluded that payment of UIM benefits does not extinguish a defendant's workers compensation lien under K.S.A. 44-504(b); rather, the lien remains intact and has priority over the UIM carrier that may elect or not elect to substitute.

*Knight* does not reference either UIM coverage or K.S.A. 40-284(f) because it was not a substitute payment case. *Knight* is, therefore, distinguishable. *Knight* focused on the application of a UM claim, not a substitute payment made by a UIM carrier. Here, we are dealing with UIM coverage. Unlike the present case, INA in *Knight* was contractually obligated to make payments to the injured driver. *Knight* omitted any reference to K.S.A. 44-504(b), which says *"in the event of recovery . . . by judgment, settlement, or otherwise*, the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer to the date of such recovery and shall have a lien therefore against the entire amount of such recovery . . . ." K.S.A. 44-504(b) makes no

distinction between the types of recovery to which the workers compensation subrogation lien attaches. Although the letter "b" was added in the 1974 supplement to K.S.A. 44-504 as a subsection label, the language in subsection b, quoted above, was in the 1973 version of 44-504 at issue in *Knight*.

Loucks relies primarily on *Knight*. He reasons, as did *Knight*, that K.S.A. 44-504 subrogation lien rights are limited to actions in tort and "not contract actions of underinsured motorist coverages purchased by the worker from his or her own independent funds." He also asserts that he receives no "windfall" under the district court's ruling. The defendants argue that by allowing workers compensation liens to attach to a UIM substitute payment, the injured worker plaintiff is made whole but does not receive a "windfall." Loucks acknowledges that he is not entitled to benefits that are duplicative of workers compensation benefits. K.S.A. 40-284(e)(4) allows "any insurer" to exclude or limit coverage "to the extent workers' compensation benefits apply." Loucks emphasizes that his Farm Bureau policy contained the following exclusionary language:

"We do not provide coverage under the Part for bodily injury sustained by any person:

. . . .

4. To the extent Workers' Compensation Benefits are required to apply.

. . . .

"This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers compensation law. . . .

. . . .

". . . Any amount otherwise payable for the damages under this coverage shall be reduced by all sums paid for the same damages because of the bodily injury by or on behalf of persons or organizations who may be legally responsible."

He contends that the above provisions prohibit the defendants from receiving UIM "benefits" payable by Farm Bureau to Loucks. He fails to acknowledge that the payment made by Farm Bureau was a substitute payment, not a payment of UIM "benefits." Our analysis is supported by *Metrix South v. Rose*, 758 So. 2d 1259 (Fla. App. 2000). *Metrix South* resolved a factual scenario and arguments from the parties similar to the ones presented here.

In *Metrix South,* the Roses sued the Concillos for damages incurred in an auto accident. The Roses' UIM carrier, AETNA, was also named as a defendant. Edward Rose was injured while in the course of his employment. He filed a claim against Travelers, his employer's workers compensation carrier. Concillos' liability carrier, Allstate, tendered its policy limits of $100,000 to the Roses. AETNA, the Roses' UIM carrier, refused permission to settle and substituted its payment of $100,000 to the Roses. Travelers filed notice of its workers compensation lien on the $100,000 substituted payment AETNA had made to the Roses. The district court, as did the district court here, held that the workers compensation lien did not attach to the UIM carrier's substitute payment. *Metrix South* reversed. 758 So. 2d at 1261-62.

Travelers, the workers compensation carrier, argued "that the trial court incorrectly characterized the $100,000 payment as UM/UIM benefits instead of settlement proceeds, even though the money was paid by the UM/UIM carrier." The *Metrix South* court agreed. 758 So.2d at 1260.

The parties here do not dispute that a workers compensation subrogation lien attaches to a payment by a liability carrier. When a substitute payment is made under K.S.A. 40-284(f), the UIM carrier steps in and substitutes its payment in the place of a tentative settlement payment by the tortfeasor's liability carrier. A K.S.A. 44-504(b) workers compensation subrogation lien attaches to the K.S.A. 40-284(f) substitute payment.

Reversed.