No. 123,552

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KENDALL TURNER,
*Appellee/Cross-appellant*,

v.

PLEASANT ACRES LLC,
*Respondent*,
and
KANSAS WORKERS COMPENSATION FUND,
*Appellant/Cross-appellee*.

SYLLABUS BY THE COURT

1.

Appellate courts review decisions from the Kansas Workers Compensation Appeals Board under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq. In doing so, appellate courts must review the record to determine whether the decision of the Board is supported by evidence that is substantial when viewed in light of the record as a whole. It is not the role of the appellate courts to reweigh the evidence or to make credibility determinations.

2.

Because the interpretation of workers compensation statutes involves a question of law, appellate review is unlimited. In interpreting a statute, appellate courts are not to give deference to the Board's legal analysis or determination.

3.

The fundamental rule of statutory construction is to determine the Kansas Legislature's intent. If a statute is plain and unambiguous, appellate courts are not to

1

speculate about the legislative intent behind the language used and must refrain from reading something into the statute that is not readily found in its words.

4.

The nature and extent of an employer's subrogation rights under the Kansas Workers Compensation Act are matters for legislative determination.

5.

The Kansas Legislature enacted the provisions of K.S.A. 44-504 to serve a dual purpose. First, K.S.A. 44-504(a) preserves an injured worker's right to assert a claim to recover damages caused by third parties. Second, K.S.A. 44-504(b) prevents an injured worker from receiving a double recovery for the same injuries.

6.

Under K.S.A. 44-504(b), if an injured worker receives a judgment, settlement, or other recovery in a claim asserted against any person or entity—other than the employer or a co-employee—who caused the injury for which compensation is payable under the Kansas Workers Compensation Act, the employer is subrogated to the extent of the compensation and medical benefits provided and has a lien against any duplicative recovery. The subrogation lien does not include any amount paid by a third party for loss of consortium or loss of services to an injured worker's spouse.

7.

K.S.A. 44-504(b) does not distinguish between the types of recovery to which the workers compensation subrogation lien attaches.

Appeal from Workers Compensation Appeals Board. Opinion filed March 18, 2022. Affirmed in part, reversed in part, and remanded with directions.

2

*Timothy A. Emerson*, of Wallace Saunders Chtd., of Wichita, for appellant/cross-appellee Kansas Workers Compensation Fund.

*Randy S. Stalcup*, of Law Office of Randy S. Stalcup, of Andover, for appellee/cross-appellant.

Before BRUNS, P.J., MALONE, J., and RICHARD WALKER, S.J.

BRUNS, J.:  In this workers compensation action, Kendall Turner sustained a work-related injury when he was involved in a head-on collision while driving a truck hauling grain for Pleasant Acres LLC. Unfortunately, the other driver was killed in the accident. Turner subsequently filed both a workers compensation claim and a lawsuit in the United States District Court for the District of Kansas against his employer's uninsured motorist carrier seeking to recover for injuries arising out of the accident. Ultimately, Turner received an award in his workers compensation action and also received a settlement in his federal lawsuit. Because Turner's employer did not have workers compensation insurance at the time of the accident, the Kansas Workers Compensation Fund (the Fund) is responsible for paying the award under K.S.A. 2020 Supp. 44-532a.

In its petition for judicial review, the Fund contends that the Kansas Workers Compensation Appeals Board (the Board) erred in finding that Turner is permanently and totally disabled, in finding that Turner is entitled to receive future medical benefits upon proper application, and in finding that the Fund does not have a subrogation lien under K.S.A. 44-504 for any duplicative recovery received by Turner in the settlement of his federal lawsuit. In response, Turner asks this court to affirm the Board's award. In addition, he has filed a cross-petition for judicial review in which he contends that the Board erred by permitting the independent medical examiner appointed by the administrative law judge to amend his initial opinion regarding Turner's permanent partial impairment rating opinion.

In light of our review of the record as a whole, we find that the Board's award is supported by substantial competent evidence. Likewise, we find that the Board's determination that Turner is entitled to future medical expenses upon proper application is supported by substantial competent evidence. We also find that the Board did not err by allowing the independent medical examiner to amend his initial opinion regarding Turner's permanent partial impairment rating. Even so, we find that the Board did err as a matter of law in finding that the Fund is not entitled to a subrogation lien under K.S.A. 44-504 for any duplicative recovery received in the settlement of his federal lawsuit for injuries arising out of the same accident that is the subject of this workers compensation action. Thus, we affirm in part, reverse in part, and remand this matter to the Board with directions.

FACTS

While hauling grain for Pleasant Acres LLC on the afternoon of December 12, 2016, Turner was involved in an accident in Kiowa County while driving on Highway 54 on his way to Bucklin. According to Turner, a vehicle heading eastbound crossed the center line and struck the tractor-trailer he was driving head-on. As a result of the accident, the driver of the other vehicle was pronounced dead. Turner was evaluated by paramedics for injuries at the scene of the accident and went to the emergency room at Great Bend Regional Hospital the next day.

An MRI revealed that Turner had a 20% compression fracture at the 12th thoracic (T12) vertebra. He was treated by Dr. Vivek Sharma, an orthopedic surgeon, who placed him in a back brace. Turner also reported pain in his lumbar spine, left hip, and his left leg. To help address his pain, Turner's primary care physician prescribed narcotic pain medication.

Approximately 25 years before the accident that is the subject of this appeal, Turner had suffered a previous back injury while working for a different employer. Evidently, Turner fell from a 15-foot stock tank and injured his lower back. He also suffered from a pinched nerve that caused pain from his right shin to his right ankle. At the time of his first deposition, Turner recalled being treated by multiple health care providers at the time of his injury and bringing a workers compensation claim. Still, he could not remember whether he had received an impairment rating.

On December 30, 2016, Turner filed a workers compensation claim against Pleasant Acres LLC. At the time of the accident, Pleasant Acres LLC did not have workers compensation insurance coverage. As a result, Turner provided notice to implead the Fund under K.S.A. 2016 Supp. 44-532a(a), which provides that "the injured worker may apply to the director for an award of the compensation benefits, including medical compensation, to which such injured worker is entitled, to be paid from the workers compensation fund."

Dr. David Hufford—who was appointed as an independent medical examiner by the administrative law judge initially assigned to Turner's claim—examined Turner and confirmed that he had suffered a T12 compression fracture as well as residual lumbar and right sacroiliac pain as a result of the accident. For that reason, Dr. Hufford referred Turner to a neurosurgeon—Dr. Matthew Henry—for further evaluation. On January 19, 2018, Dr. Henry performed a kyphoplasty to help relieve the pain caused by the T12 compression fracture. After the surgery, Turner reported that the pain in his thoracic spine had improved but he reported that the pain in his lower back continued to make it hard to sit, stand, stoop, and sleep.

Unbeknownst to the Fund, Turner also filed a lawsuit in the United States District Court for the District of Kansas against Continental Western Insurance Company on June 7, 2018. *Kendall Turner v. Continental Western Insurance Company*, 2018-CV-02305

5

(D. Kan. 2018). It is undisputed that Continental Western Insurance Company carried the uninsured motorist coverage on the truck that Turner was driving on behalf of his employer on December 12, 2016. In his complaint, Turner alleged that the other driver—who died as a result of injuries suffered in the accident—"negligently and carelessly drove his vehicle over the left of center, thereby proximately causing an accident and severe injuries and damages to [Turner]."

Turner also alleged in his complaint that the decedent was "negligent, reckless, wanton and careless" in at least 12 ways, including but not limited to failing to maintain his vehicle in the appropriate lane, driving left of center, inattentive operation of a motor vehicle, and failing to take evasive action. As a result of the decedent's conduct, Turner claimed that he "received injuries to his spine and back" and had suffered damages including "pain and suffering, mental anguish, loss of time, loss of enjoyment of life, medical expenses, economic loss, permanent disfigurement, and permanent disability." Thus, Turner prayed for a judgment against the uninsured motorist carrier to recover the damages caused by the decedent.

The parties to the federal lawsuit executed a "Settlement Agreement and Release" on December 17, 2018. The settlement provides that in exchange for the payment of $230,000 by Continental Western Insurance Company, Turner agreed to release all claims arising out of the injuries, damages, and losses sustained by him in the accident on December 12, 2016. The claims released included—among other things—"all past, present and future damages or benefits for wage loss benefits, essential services, medical bills or benefits, rehabilitation benefits, counseling, pain and suffering, emotional distress, permanent impairment or disfigurement, and any and all other damages" arising out of the accident. However, the settlement agreement does not include an itemization of how much was paid for each element of damage.

6

Meanwhile in the workers compensation action, Turner retained Dr. Daniel Zimmerman—an internal medicine physician—as an expert witness. In a report dated June 14, 2018, Dr. Zimmerman rendered the following opinion:

"[Turner] sustained a T12 compression fracture but also sustained injuries affecting the lumbosacral spine which is noted by inference in the emergency department triage report dated December 13, 2016 at which time it was reported that he on that date was complaining of lower and upper back pain.

"The treatment that [Turner] has received was for the compression fracture at T12. He has had little treatment for the persistent pain and discomfort as a consequence of the lumbar spine injury.

"On examination when seen in this office, [Turner] had range of motion restrictions at the lumbar level. He had pain and discomfort in palpation over the lumbar spine and lumbar paraspinous musculature. He had a positive straight leg raising test bilaterally. He had sensory change in the right lower extremity."

Dr. Zimmerman opined that the accident was the prevailing factor causing Turner's thoracic compression fracture as well as the symptomatic lumbar disc narrowing of the lumbar spine. Dr. Zimmerman further opined that Turner had not reached maximum medical improvement and would benefit from future medical treatment. In Dr. Zimmerman's opinion, Turner has a 9% permanent partial impairment of function based on the Sixth Edition of the American Medical Association (AMA) Guides to the Evaluation of Permanent Impairment (6th ed. 2008).

In addition, Dr. Zimmerman rendered the following opinion regarding Turner's permanent work restrictions:

"[Turner] is capable of lifting 10 pounds on an occasional basis and 5 pounds on a frequent basis. He should avoid frequent flexing of the lumbosacral spine and, thus, should avoid frequent bending, stooping, squatting, crawling, kneeling, and twisting activities at the lumbar level as such activities would be likely to increase the pain and discomfort affecting the lumbar spine and lumbar paraspinous musculature.

7

"He is able to sit for approximately 20 to 30 minutes before back pain and discomfort would cause him to move about to change positions. He is able to stand for approximately 15-20 minutes before pain and discomfort affecting the thoracolumbar spine would cause him to wish to get off his feet. He is able to walk, by his report, approximately 7 blocks before pain and discomfort affecting the thoracolumbar spine and right lower extremity would cause him to wish to get off his feet."

Turner also retained Paul Hardin—a vocational rehabilitation consultant—to evaluate his ability to be gainfully employed. Based on Hardin's report, Dr. Zimmerman found Turner can no longer perform 10 out of 14 job tasks, which results in a 71% task loss. According to Hardin, Turner has a 100% wage loss—based on his work restrictions, age, physical capabilities, education, training, prior experience, and geographical area—and is essentially unemployable. On the other hand, Dr. Hufford—who performed the independent medical examination—found that Turner can no longer perform 8 out of 14 tasks, which results in a 57% task loss. Nevertheless, Dr. Hufford acknowledged that it would be difficult for Turner to find gainful employment.

Additionally, Turner was evaluated by Steven Benjamin—who is also a vocational rehabilitation consultant—at the Fund's request. Based on Benjamin's report, Dr. Hufford opined that based on his work restrictions, Turner could no longer perform 8 of 16 job tasks, which results in a 50% task loss. In Benjamin's opinion, Turner could potentially perform a truck driving position that did not involve loading and unloading. Yet Benjamin recognized that under his current work restrictions, Turner has 100% wage loss and cannot engage in gainful employment. According to Turner, he has been unemployed since the accident despite having submitted numerous employment applications.

On January 10, 2019, Turner returned to Dr. Hufford for a second independent medical examination. In his written report, Dr. Hufford rendered the opinion that Turner suffered from a T12 compression fracture and residual pain including the right sacroiliac joint as a result of the work-related accident. Further, Dr. Hufford opined that the

accident was the prevailing factor for Turner's thoracic and right sacroiliac pain. However, in Dr. Hufford's opinion, the prevailing factor for Turner's low back pain—even if it had increased after the accident—is a preexisting condition. In particular, Dr. Hufford noted that Turner was already taking prescription pain medication for chronic low back pain before the accident at issue in this workers compensation action.

Dr. Hufford assigned Turner a permanent partial impairment rating under the Sixth Edition of the AMA Guides of 8% to the body as a whole. This rating was based on a 6% impairment of the thoracic spine and a 2% impairment relating to the right sacroiliac strain. As for the need for future medical treatment, Dr. Hufford opined:

> "No future medical needs are anticipated as a consequence of this injury. Specifically, with the presence of chronic low back pain requiring opioid analgesics prior to the occupational incident of December 12, 2016 there is no further treatment anticipated as a consequence of this specific injury. Certainly one may need to consider apportionment for the dosage and schedule of the analgesics. No future surgical intervention appears warranted. A direct right sacroiliac injection could lessen some of his residual symptomatology but would unlikely be restorative at this point."

On June 11, 2019, an administrative law judge held the regular hearing on Turner's workers compensation claim. Turner testified at the hearing and several exhibits—including various deposition transcripts—were admitted into evidence. At some point following the regular hearing, the Fund learned of Turner's federal lawsuit arising out of the same accident as this workers compensation action. By that time, the lawsuit had been settled without notice being provided to the Fund. In response to learning of the settlement of the lawsuit, the Fund moved for a suspension of the terminal dates in this action in order to obtain additional discovery in an attempt to protect its subrogation and lien rights under K.S.A. 44-504.

9

The Fund also discovered the records from Turner's previous workers compensation actions after the regular hearing. The Fund provided the additional records to Dr. Hufford, and he was deposed again on January 2, 2020. Dr. Hufford testified that after reviewing the records relating to Turner's 1995 and 1997 workers compensation claims, he had revised his opinion. Dr. Hufford opined that Turner's permanent partial impairment rating under the Sixth Edition of the AMA Guides should be 7%—instead of 8%—of the body as a whole.

On March 11, 2020, the original administrative law judge assigned to Turner's workers compensation action recused, and another administrative law judge was appointed to replace her. About four months later, on July 27, 2020, the new administrative law judge assigned to the claim issued a 22-page award in favor of Turner. In the award, the administrative law judge found that both Dr. Zimmerman's impairment rating of 9% and Dr. Hufford's impairment rating of 7% was supported by the evidence. Giving "equal weight" to each opinion, the administrative law judge determined that Turner sustained an 8% permanent partial functional impairment to the body as a whole arising out of the work-related accident on December 12, 2016.

After reviewing the conflicting opinions rendered by the expert witnesses, the administrative law judge also concluded that Turner is permanently and totally disabled as a result of the accident. In addition, she concluded that Turner "has met his burden to prove that it is more probable than not that he will require future medical treatment related to his injuries" and ordered that such benefits would be considered "upon proper application." Ultimately, the administrative law judge awarded permanent total disability compensation to Turner at the rate of $578.34 per week but not to exceed $155,000. Finally, the administrative law judge denied the Fund's request for a subrogation credit under K.S.A. 44-504.

Subsequently, the Fund filed a timely application for review to the Board, which held oral argument on November 19, 2020. In an eight-page order entered on December 16, 2020, the Board affirmed the administrative law judge's award in its entirety. Thereafter, the Fund filed a timely petition for judicial review, and Turner filed a timely cross-petition for review.

ANALYSIS

*Issues Presented and Standard of Review*

There are four issues presented on appeal. First, whether the Board erred in determining that Turner is permanently and totally disabled. Second, whether the Board erred in finding that Turner is entitled to future medical benefits upon proper application. Third, whether the Board erred in concluding that the Fund is not entitled to a right of subrogation and lien under K.S.A. 44-504. Fourth, whether the Board erred in permitting the independent medical examiner to amend his opinion regarding Turner's permanent impairment rating.

We review the Board's decision under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq. Pursuant to the KJRA, the party challenging the Board's action bears the burden of showing its order was invalid. See K.S.A. 77-621(a)(1). We must review the record to determine whether the decision of the Board is supported by evidence that is substantial when viewed "in light of the record as a whole." K.S.A. 77-621(c)(7). In other words, we are to review the adequacy of the evidence "in light of all the relevant evidence in the record cited by any party" either in support of or detracting from the Board's findings. K.S.A. 77-621(d). We should also take into consideration "any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the

11

record supports its material findings of fact." K.S.A. 77-621(d). We are not, however, to reweigh the evidence presented to the Board. K.S.A. 77-621(d).

The ultimate determination of whether the Board's findings are supported by substantial competent evidence is a question of law. *Atkins v. Webcon*, 308 Kan. 92, 95, 419 P.3d 1 (2018). Likewise, interpretation of workers compensation statutes involves a question of law, and our review is unlimited. *Hawkins v. Southwest Kansas Co-op Service*, 313 Kan. 100, 107, 484 P.3d 236 (2021). In considering an interpretation of a statute, we owe no deference to the Board's legal analysis or determination. *Estate of Graber v. Dillon Companies*, 309 Kan. 509, Syl. ¶ 2, 439 P.3d 291 (2019).

The fundamental rule of statutory construction is determining the Legislature's intent. In doing so, we "begin with the plain language of the statute, giving common words their ordinary meaning." If a statute is plain and ambiguous on its face, we are not to speculate about the legislative intent behind that clear language. In particular, we are to "refrain from reading something into the statute that is not readily found in its words. [Citation omitted.]" *Johnson v. U.S. Food Service*, 312 Kan. 597, 600-01, 478 P.3d 776 (2021). Only if the language of the statute is ambiguous are we to look to the statutory canons of construction to resolve the uncertainty. 312 Kan. at 601.

*Extent of Turner's Impairment*

The Fund contends that Turner's workers compensation award should have been based solely on the opinion of the independent medical examiner, Dr. Hufford, who found that Turner suffered a 7% functional impairment. The Fund suggests that because Dr. Hufford was appointed by the administrative law judge and was authorized to provide medical treatment, the Board should have given his opinions "greater weight" than the opinions of Dr. Zimmerman—who was retained as an expert witness by Turner. In particular, the Fund argues that Dr. Zimmerman's opinions should be discounted because

12

he examined Turner on only one occasion, that he reviews cases "almost exclusively for plaintiffs and claimants," and that his "opinions were bought and paid for by Claimant."

A permanent total disability exists "when the employee, on account of the injury, has been rendered completely and permanently incapable of engaging in any type of substantial and gainful employment. Expert evidence shall be required to prove permanent total disability." K.S.A. 2020 Supp. 44-510c(a)(2). In other words, an employee is permanently and totally disabled when the employee is "'essentially and realistically unemployable.'" *Wimp v. American Highway Technology*, 51 Kan. App. 2d 1073, 1078, 360 P.3d 1100 (2015). Whether an employee is able to engage "in substantial and gainful employment is a question of fact," and the appellate courts "review a challenge to the Board's factual findings in light of the record as a whole to determine whether the findings are supported by substantial evidence." 51 Kan. App. 2d at 1076.

Here, both Dr. Hufford and Dr. Zimmerman rendered opinions about the nature and extent of Turner's functional impairment under the Sixth Edition of the AMA Guides to the Evaluation of Permanent Impairment. Although Dr. Hufford initially assigned Turner a rating of 8% impairment to the body as a whole, he later amended his opinion to a rating of 7% impairment to the body as a whole after reviewing additional medical records from Turner's two prior workers compensation cases. On the other hand, Dr. Zimmerman assigned Turner a rating of 9% impairment to the body as whole based on his examination and review of medical records.

Certainly, reasonable physicians can differ in their opinions regarding the nature and extent of a claimant's work-related injuries. Significantly, the administrative law judge found both Dr. Hufford and Dr. Zimmerman to be credible. She also found "the impairment rating opinions of both Dr. Hufford and Dr. Zimmerman to be reasonable and supported by the evidence." As a result, she accorded both opinions "equal weight" and ultimately concluded that Turner had "sustained an 8% permanent partial functional

13

impairment to the body as a whole as a result of his December 12, 2016, work-related accident."

The administrative law judge then turned her attention to the opinions rendered by the vocational rehabilitation consultants about Turner's ability to work. In doing so, she considered K.S.A. 2020 Supp. 44-510c(a)(2), which defines "permanent total disability" to mean that "the employee, on account of the injury, has been rendered completely and permanently incapable of engaging in any type of substantial and gainful employment." The administrative law judge found based on her review of the evidence that Turner had "met his burden to prove that he is permanently and totally disabled as a result of his December 12, 2016, work-related accident."

Specifically, the administrative law judge found that Hardin—the vocational rehabilitation expert who was retained by Turner—opined "that Claimant is permanently and totally disabled under both the restrictions of Dr. Zimmerman and Dr. Hufford." In contrast, she found that Benjamin—the vocational rehabilitation expert who was retained by the Fund—"opined that Claimant is permanently and totally disabled under the restrictions of Dr. Zimmerman but stated that Claimant is capable of substantial and gainful employment under Dr. Hufford's restrictions." Nevertheless, Benjamin agreed that if Turner could not find "a non-touch driving position that does not require loading or unloading," he would be considered permanently and totally disabled.

The administrative law judge also reviewed the opinions of Dr. Hufford and Dr. Zimmerman regarding the issue of permanent and total disability. She found that it was Dr. Zimmerman's opinion that Turner is unable to engage in substantial and gainful employment as a result of the injuries suffered in the accident. On the other hand, she found "Dr. Hufford's opinion [on the issue of permanent and total disability] was equivocal." In support of this finding, the administrative law judge pointed to Dr. Hufford's testimony in which he recognized that "it would be 'at least very difficult' for

14

[Turner] to find gainful employment." She also pointed to Dr. Hufford's testimony that he is a certified Department of Transportation examiner and that he did not believe Turner would pass the examination because of safety concerns because of his continuing pain.

Based on our review of the record as a whole—considering both the evidence supporting and detracting from the Board's decision—we find that there is substantial competent evidence to support its finding that Turner is permanently and totally disabled as a result of the work-related accident. Although the Fund would like for us to reweigh the evidence and make credibility determinations, it is not our role to do so. K.S.A. 77-621(d); see *Williams v. Petromark Drilling*, 299 Kan. 792, 795, 326 P.3d 1057 (2014). We therefore conclude that the Board did not err in affirming the administrative law judge's award of permanent total disability compensation.

*Future Medical Expenses*

Next, the Fund contends that the Board erred in ruling that Turner was entitled to future medical benefits upon application. The Fund argues that Turner "has failed to prove that it is more probable than not that future medical treatment will be required." In support of this argument, the Fund points to Dr. Hufford's opinion that no future medical treatment appears to be warranted and suggests that Dr. Zimmerman's opinion that Turner "might need" additional treatment is speculative.

K.S.A. 2020 Supp. 44-510h(a) provides that it is an employer's duty to provide future medical treatment as may reasonably be necessary to cure or relieve the effects of a work-related injury. Even so, under K.S.A. 2020 Supp. 44-510h(e), there is a statutory presumption that the employer's obligation to provide for future medical treatment "shall terminate upon the employee reaching maximum medical improvement." In turn, K.S.A. 2020 Supp. 44-525(a) provides that this presumption may be overcome if "it is proved by the claimant that it is more probable than not that future medical treatment, as defined in

15

subsection (e) of K.S.A. 44-510h, and amendments thereto, will be required as a result of the work-related injury."

A review of the record reveals that Turner testified that he is in pain most of the day, which limits his activities and often interrupts his sleep. In addition, Turner testified that he continues to take prescribed pain medication under the supervision of his primary care physician. In fact, Dr. Hufford recognized that sacroiliac injections may reduce Turner's symptoms even though they would not have any restorative benefits. Also, Dr. Zimmerman testified that in his opinion Turner could be treated with medication and injections in the future to manage the symptoms as a result of the injuries sustained in the accident on December 12, 2016.

In reviewing the evidence in light of the record as a whole—including Turner's testimony about his pain and the testimony of the physicians about medication as well as injections—we find that there is substantial competent evidence to support an award of future medical expenses upon proper application. Of course, as the Board found in its order, "[w]hether the work-related accident is the prevailing factor necessitating additional medical treatment can be addressed in post-award medical proceedings under K.S.A. 44-510k." Thus, we conclude that the Board did not err in affirming the administrative law judge's award of future medical expenses upon proper application.

*Subrogation Rights under K.S.A. 44-504*

The Fund further contends that the Board erred in concluding that the Fund did not have subrogation rights under K.S.A. 44-504 for any duplicative recovery received by Turner from his employer's uninsured motorist carrier for the injuries he sustained in the accident on December 12, 2016. Because it stands in the shoes of the employer in this workers compensation action, the Fund argues that it is entitled to a subrogation credit for the amount received by Turner in the settlement of his federal lawsuit to the extent that

16

his recovery is duplicative of the compensation awarded for the same injuries in this workers compensation action. The Fund recognizes, however, that it is not entitled to a subrogation credit against any portion of the recovery in the federal lawsuit that can be shown to have been paid for loss of consortium or loss of services to Turner's spouse.

As discussed above, our review of the Board's interpretation of a statute involves a question of law. As a result, our review is unlimited under K.S.A. 77-621(c)(4), and we are to give no deference to the Board's statutory interpretation. *Hawkins*, 313 Kan. at 107. Rather, we must determine the Legislature's intent from the plain and unambiguous language used in the statute as written. *Jarvis v. Kansas Dept. of Revenue*, 312 Kan. 156, 159, 473 P.3d 869 (2020). In doing so, we are not to "'speculate as to the legislative intent behind it or read into the statute something not readily found in it.'" *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016) (quoting *State v. Keel*, 302 Kan. 560, 572, 357 P.3d 251 [2015]).

In Kansas, "[t]he nature and extent of an employer's subrogation rights under the workers compensation statutes are matters for legislative determination." *Hawkins*, 313 Kan. at 108 (citing *McGranahan v. McGough*, 249 Kan. 328, Syl. ¶ 2, 820 P.2d 403 [1991]). Hence, the Kansas Legislature has enacted the provisions of K.S.A. 44-504 to serve a dual purpose. First, K.S.A. 44-504(a) preserves an injured worker's right to assert a claim to recover damages caused by third parties. Second, K.S.A. 44-504(b) prevents an injured worker from receiving a double recovery for the same injuries. *Loucks v. Gallagher Woodsmall, Inc.*, 272 Kan. 710, Syl. ¶ 2, 35 P.3d 782 (2001); see *Hawkins*, 313 Kan. at 108-09.

K.S.A. 44-504 provides, in relevant part, as follows:

> "(a) When the injury or death for which compensation is payable under the workers compensation act was caused under circumstances *creating a legal liability*

17

*against some person other than the employer* or any person in the same employ to pay damages, the injured worker or the worker's dependents or personal representatives shall have the right to take compensation under the workers compensation act and pursue a remedy by proper action in a court of competent jurisdiction against such other person.

"(b) In the event of recovery from such other person by the injured worker or the dependents or personal representatives of a deceased worker by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer to the date of such recovery and shall have a lien therefor against the entire amount of such recovery, excluding any recovery, or portion thereof, determined by a court to be loss of consortium or loss of services to a spouse. The employer shall receive notice of the action, have a right to intervene and may participate in the action. The district court shall determine the extent of participation of the intervenor, including the apportionment of costs and fees. Whenever any judgment in any such action, settlement or recovery otherwise is recovered by the injured worker or the worker's dependents or personal representative prior to the completion of compensation or medical aid payments, the amount of such judgment, settlement or recovery otherwise actually paid and recovered which is in excess of the amount of compensation and medical aid paid to the date of recovery of such judgment, settlement or recovery otherwise shall be credited against future payments of the compensation or medical aid." (Emphasis added.)

In reviewing the Board's order in this workers compensation action, we find that its interpretation of K.S.A. 44-504 inappropriately reads language into the statute that was simply not included by our Legislature in enacting the statute. In particular, the Board found that K.S.A. 44-504 "only prevents double recovery from a third-party tortfeasor and not contractual rights contained in an employer's automobile policy." However, as our Supreme Court has held, the text of "K.S.A. 44-504(b) makes no distinction between the types of recovery to which the workers compensation subrogation lien attaches." *Loucks*, 272 Kan. at 717-18. In fact, the words "tort" or "contract" are not found in subsections (a) or (b) of the statute. Additionally, as in *Loucks*, the Fund steps into the shoes of the employer under K.S.A. 44-504 and may obtain a lien against a recovery from a third party. 272 Kan. at 711-12.

18

The plain language of K.S.A. 44-504(a) preserves the right of an injured worker to pursue a claim in court against a person or entity—other than the employer or a co-employee—to enforce "a legal liability" to pay damages to the injured worker for injuries compensable under the Kansas Workers Compensation Act. In Kansas, an uninsured motorist carrier has a legal liability to pay for the damages proximately caused by the fault of an uninsured motorist. K.S.A. 40-284(b). In turn, under K.S.A. 44-504(b), if the injured worker receives a recovery—which includes both judgments and settlements—in an action against a third party that is legally liable to pay damages for the same injuries as those claimed in the workers compensation action, the employer—or in this case the Fund that is standing in the shoes of the employer—has a right of subrogation "to the extent of the compensation and medical aid provided . . . and shall have a lien . . . against the entire amount of such recovery, excluding any recovery, or portion thereof, determined . . . to be loss of consortium or loss of services to a spouse."

Rather than relying on the plain and unambiguous language of the statute as our Supreme Court instructs us to do, the Board interpreted K.S.A. 44-504 based on a 40-year-old opinion issued by the United States Court of Appeals for the Tenth Circuit in *Knight v. Insurance Co. of North America*, 647 F.2d 127 (10th Cir. 1981). In a three-page opinion, the *Knight* court suggested that the version of K.S.A. 44-504 in effect at the time applied "to tort claims only, both as to the rights it preserves for employees and the subrogation right it creates for employers." 647 F.2d at 129. Then, citing cases from Georgia and Kentucky, the Board concluded that the statute was "inapplicable" to an uninsured motorist claim. 647 F.2d at 129.

We find that the administrative law judge—and ultimately the Board—erred as a matter of law in finding that *Knight* is "still good law." While cases from other jurisdictions may sometimes provide guidance, they are not controlling on Kansas appellate courts. See *Kansas City Grill Cleaners v. BBQ Cleaner*, 57 Kan. App. 2d 542, 551-52, 454 P.3d 608 (2019) (quoting *State v. Thompson*, 284 Kan. 763, 801, 166 P.3d

19

1015 [2007]). Likewise, as our Supreme Court has held, an appellate court must give effect to the language used by our Legislature rather than "to perpetuate incorrect analysis of workers compensation statutes [and] it will reject rules that were originally erroneous or are no longer sound. [Citations omitted.]" *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 610, 214 P.3d 676 (2009). Thus, we conclude that *Knight* should not be used as a justification to usurp the plain and unambiguous language of K.S.A. 44-504.

Furthermore, it is important to recognize that the outcome in *Knight* was based on the mistaken premise that "uninsured motorist policies sound in contract." 647 F.2d at 129. As our Supreme Court has held—and as Turner candidly recognizes in his brief—Kansas law treats both uninsured motorist and underinsured motorist claims as hybrids. In other words, such claims are a "combination of contract and tort." *Stemple v. Maryland Casualty Company*, 282 Kan. 405, 408, 144 P.3d 1273 (2006). Regardless, for the reasons discussed above, the plain and unambiguous language of K.S.A. 44-504 does not limit an employer's subrogation rights in a workers compensation action to recoveries obtained in a particular type of action.

Consequently, based on the plain and unambiguous language of K.S.A. 44-504, we find that the Fund has a subrogation lien against any duplicative recovery Turner received by way of settlement in his federal lawsuit against the uninsured motorist carrier arising out of the same work-related accident that is the subject of this workers compensation action. We also find that under K.S.A. 44-504(b), the Fund is "subrogated to the extent of the compensation and medical aid" awarded in this workers compensation action. Moreover, we find that the Fund's subrogation lien is "against the entire amount of such recovery, excluding any recovery, or portion thereof, determined . . . to be loss of consortium or loss of services to a spouse." K.S.A. 44-504(b).

Under the circumstances presented, we remand this workers compensation action to the Board for determination of the amount of the Fund's subrogation lien. The Board

20

may receive additional evidence to resolve this question or may remand this matter to the administrative law judge for additional fact-finding. After this determination has been made, the Board is directed to give the Fund credit against the workers compensation award to the extent provided by statute. In this way, the intent of the Kansas Legislature will be preserved in that Turner will receive compensation for the injuries that he suffered as a result of the work-related accident, but he will not receive a double recovery.

*Cross-appeal*

In his cross-appeal, Turner contends that the Board erred by permitting Dr. Hufford—who was appointed by the administrative hearing officer to serve as an independent medical examiner—to amend his initial opinion about Turner's permanent partial impairment rating. Based on our review of the record as a whole, we do not find that the Board erred in allowing Dr. Hufford to testify about his modified opinion. This is because his modified opinion was based on additional information that was not discovered and provided to him until after he had rendered his initial opinion.

The record reflects that Dr. Hufford modified his opinion based on his review of three reports from physicians who examined Turner in his prior workers compensation actions. Although K.S.A. 44-519 generally prohibits the Board from considering reports from other health care providers who do not testify, the statute "'does not prevent a testifying physician from considering medical evidence generated by other absent physicians *as long as* the testifying physician is expressing his or her own opinion rather than the opinion of the absent physician.' (Emphasis added)." *Roberts v. J.C. Penney Co.*, 263 Kan. 270, 279, 949 P.2d 613 (1997) (quoting *Boeing Military Airplane v. Enloe*, 13 Kan. App. 2d 128, Syl. ¶ 3, 764 P.2d 462 [1988]). Here, a review of the record shows that Dr. Hufford was expressing his own opinion rather than simply mimicking the opinions of the physicians in the prior workers compensation actions.

CONCLUSION

In light of our review of the entire record, we find that there is substantial competent evidence to support the Board's finding that Turner is permanently and totally disabled as a result of the work-related accident on December 12, 2016. Accordingly, we conclude that the Board did not err in affirming the administrative law judge's award of permanent total disability compensation. In addition, we conclude that there is substantial competent evidence to support an award of future medical expenses upon proper application. We also conclude that the Board did not err by permitting the independent medical examiner to amend his opinion regarding Turner's permanent partial impairment rating based on additional information that was discovered following his initial deposition. Thus, we affirm the Board's award as well as its order about future medical expenses.

Furthermore, based on the plain and unambiguous language of K.S.A. 44-504, we conclude that the Fund has a subrogation lien against any duplicative recovery Turner received in his federal lawsuit against the uninsured motorist carrier arising out of the same work-related accident that is the subject of this workers compensation action. Even so, we find that the Fund is not entitled to a subrogation lien on any portion of the recovery that is found to have been paid for loss of consortium or loss of services to Turner's spouse.

For these reasons, we reverse the Board's finding that the Fund was not entitled to a subrogation lien, and we remand this action to the Board for a determination of the amount of the Fund's subrogation lien under K.S.A. 44-504(b). After the amount has been determined, the Board is directed to give the Fund credit against the workers compensation award to the extent provided by the statute.

Affirmed in part, reversed in part, and remanded with directions.

22